**Doudou JANNEH, Plaintiff–Appellee,**

v.

**GAF CORPORATION and Ozalid Corporation, Defendants,**

**GAF Corporation, Defendant–Appellant.**

**No. 73, Docket 89–7354.**

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1989.

Decided Oct. 11, 1989.

---

**1.** Some appellants had raised a statute of limitations defense in this, the federal action. Others had not.

Patrick G. Brady, Newark, N.J. (Kevin C. Donovan, Carpenter, Bennett & Morrissey, Newark, N.J., of counsel), for defendant-appellant.

Allen Stone, Philadelphia, Pa. (Michelle E. Stone, Stone and Stone, Philadelphia, Pa., of counsel), for plaintiff-appellee.

Before KAUFMAN, CARDAMONE and FRIEDMAN [*], Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Should a court system awash in backlog delay further the disposition of a case where there is convincing proof that a settlement has been reached? In this case we confront that question from two perspectives. The immediate issue, of paramount importance to the litigants, is whether a compromise was reached in this particular instance.

The broader question concerns how best this Court should deal with such disputes. We are told that by allowing immediate appeal from an order denying enforcement of a purported settlement we undermine the salutary final judgment rule. But, we also gain an opportunity to review an order whose main effect is to keep alive litigation that arguably has been settled—thereby increasing the burden on the system as a whole. The ultimate question is whether such interlocutory orders present a need for immediate review urgent enough to overcome the general requirement of finality.

I.

Because the details of settlement negotiations in this case are critical to a determination of whether an agreement was reached, we recite some of the steps leading to the settlement.

---

[*] Honorable Daniel M. Friedman, United States Circuit Judge, Federal Circuit, sitting by designation.

In 1983 Appellee Doudou Janneh instituted a *pro se* action alleging that his employer, Appellant GAF Corporation, wrongfully denied him a promotion and permitted the existence of a racially hostile workplace, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, 42 U.S.C. § 1981, and the New York Human Rights Law, N.Y.Exec.Law § 290 *et seq.*

The suit proceeded at a leisurely pace until June of 1985 when Janneh offered to settle for $80,000, a sum GAF categorically rejected as "ridiculous." After Janneh reduced the proposal to $25,000, and GAF unsuccessfully counteroffered $500, the court appointed Alexander Luckanick as counsel for Janneh. Luckanick informed his client that a maximum recovery would approximate $10,000.

With Janneh's authority, Luckanick telephoned Brady and proposed settling for $6,000. This sparked a $3,000 counteroffer. Luckanick recommended accepting this offer and Janneh agreed. On December 22, 1987, Luckanick forwarded to Brady a confirmation letter stating that Janneh was "agreeable to settling his claim against GAF for $3,000," and Janneh signed the letter below a line reading: "I agree to settle my case for three thousand dollars."

On January 4, 1988, Janneh decided he wanted new counsel and so advised Judge McAvoy. His *ex parte* letter made no reference to the December 22 "settlement letter" and in fact asserted that negotiations had failed.[1] His request was denied.

After several discussions during which Luckanick advised that he planned to withdraw as counsel, Brady indicated his intent to enforce the settlement.

In July, 1988, Brady informed the court of the settlement agreement. During a September status conference, at which Luckanick finally withdrew and new counsel was appointed, Janneh attacked the settlement. He did not deny signing the letter agreement, but instead argued that the settlement should be set aside because he "signed this agreement under civil pressure": his former counsel, he claimed, told him that he did not have much of a case, thus "coercing" him to settle.

Later, GAF moved for an order enforcing the settlement agreement. Judge McAvoy denied the motion, finding "that no such settlement agreement was ever formed." It is that order from which GAF appeals.

## II.

■ Before addressing the merits of GAF's appeal, we consider the threshold question whether we have jurisdiction over the controversy. We hold that the collateral order exception to 28 U.S.C. § 1291 confers appellate jurisdiction over this case.

■ Title 28 U.S.C. § 1291 establishes a policy against piecemeal litigation by providing appellate review only on "final decisions" of the district courts. The order of the court below is not "final" within the meaning of 28 U.S.C. § 1291. The judiciary, however, has crafted the "collateral order doctrine" as a narrow exception to the finality requirement to meet special circumstances. For it to apply an order must: first, "conclusively determine the disputed question"; second, "resolve an important issue completely separate from the merits of the action"; and third, "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). We believe the order here meets these conditions.

Judge McAvoy's order conclusively determined the disputed question—whether settlement was reached. The order clearly was made with the expectation that it would be the "final word on the subject addressed." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12–13 n. 14, 103 S.Ct. 927, 935–936 n. 14, 74 L.Ed.2d 765 (1983).

It also resolved an important issue completely separate from the merits of Janneh's employment discrimination action.

---

1. GAF did not learn of this letter until September, 1988.

Judge McAvoy's ruling that a settlement was never reached is "important" because the order involves the "deprivation of significant rights," *Cullen v. N.Y. State Civil Serv. Comm'n*, 566 F.2d 846, 848 (2d Cir. 1977), namely, GAF's bargained-for right to avoid trial by enforcing the settlement agreement.[2] That right implicates our nation's strong judicial and public policies favoring out-of-court settlement. Litigants, courts, and Congress view settlement as a positive force, indispensable to judicial administration.[3] Foregoing formal courtroom procedures, including discovery, trial, briefs and arguments, brings substantial benefits to the parties. The costs of litigation are reduced and crowded dockets are relieved.

We note that Congress has expressed a strong preference for encouraging voluntary settlement of employment discrimination claims in particular. *See* 42 U.S.C. § 2000e–5(b). In *Carson v. American Brands, Inc.*, the Supreme Court described the "serious consequences" of an order refusing to approve a consent decree in a Title VII case, namely, denying the parties "the opportunity to compromise their claim" and depriving them of "the benefits of the settlement agreement they negotiated." 450 U.S. 79, 89, 101 S.Ct. 993, 999, 67 L.Ed.2d 59 (1981). The order appealed from here would have the same effect on the same vital rights.

Moreover, reviewing the district court's order would not involve "considerations that are 'enmeshed in the factual and legal issues comprising'" Janneh's discrimination claim. *See Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. at 2458 (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)).[4]

Finally, Judge McAvoy's order is effectively unreviewable on appeal if it "involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Midland Asphalt Corp. v. United States*, —— U.S. ——, ——, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989) (quoting *United ed States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)). The "critical question" is whether "the essence" of the claimed right is a right not to go to trial at all. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 1950, 100 L.Ed.2d 517 (1988). GAF claims that the settlement negotiated with Janneh created a right to avoid the uncertainties and irritations of a trial and appeal.

When a district court has denied a criminal defendant's claim of right not to stand trial (for example, on double jeopardy grounds), or a civil defendant's claim of immunity, the Supreme Court has consistently held the court's decision appealable, because "such a right cannot be effectively

---

**2.** Janneh argues that an issue is not important unless it involves a "serious and unsettled question of law". However, this Court has not required more than that the appeal "present a question that is substantial, *i.e.*, not doomed to failure under controlling precedent." *Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir.1988). Such an issue may not be of general interest, but *Cullen* makes clear that a litigant need show either that "the issue presented is 'of broad applicability *or* involves the deprivation of significant rights.'" 566 F.2d at 848 (emphasis added) (citation omitted). *See also Farmland Indus. v. Frazier–Parrott Commodities*, 806 F.2d 848, 850 (8th Cir.1986) (order need not be of general interest, but only of special interest to the parties).

**3.** This Court has shown a special interest in encouraging parties to end their disputes at the negotiating table. At the appellate level, we instituted the Civil Appeals Management Plan

("CAMP") to encourage the resolution of appeals without the participation of judges. *See* Kaufman, *Must Every Appeal Run the Gamut?—The Civil Appeals Management Plan*, 95 Yale L.J. 755 (1986).

**4.** Thus, the instant order is quite distinct from that considered in *Seigal v. Merrick*, 590 F.2d 35 (2d Cir.1978). There, we held that an order refusing to approve a settlement in a stockholders' derivative action was not an appealable order, in large part because appellate review of such an order would require the court to "weigh the chances of success of the plaintiff's case against the sufficiency of the settlement." *Id.* at 38. In this case, no such inquiry into the merits is necessary. *Cf. Weilbacher v. J.H. Winchester & Co.*, 197 F.2d 303, 305 (2d Cir.1952) (A. Hand, J.) (question whether the trial court could disregard a stipulation arising out of a settlement between the parties is quite independent of the merits).

vindicated after the trial has occurred." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

The asserted right not to go to trial can appropriately be based on a contract between the parties. For example, in *Local 771, I.A.T.S.E. v. RKO General, Inc.,* 546 F.2d 1107 (2d Cir.1977), the district court denied a motion to dismiss made on the ground that arbitration was the exclusive remedy under a labor contract. In allowing an appeal, this Court reasoned that the appellant's right to avoid trial, gained through contract negotiations, would be lost irretrievably if trial were permitted.[5] *Id.* at 1112. *See also Moses H. Cone Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (in action to compel arbitration under the terms of a contract, a district court order staying action pending resolution of concurrent state-court action is immediately appealable).

One crucial benefit of a settlement agreement is, as we have indicated, the avoidance of trial. GAF bargained for and obtained the right to avoid a trial by agreeing to a settlement. The essence of that right could not be vindicated effectively after the trial has occurred. Reversing the order after an appeal from a final judgment would be as effective as slamming the barn door after the horse has already bolted.

The instant order therefore meets the three criteria of the collateral order doctrine. We must cautiously note, however, the limits of our decision. In *Lauro Lines v. Chasser,* — U.S. —, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989), the Supreme Court ruled that a district court order denying a motion to dismiss on the basis of a contractual forum-selection clause is not appealable under the collateral order doctrine. The case before us is distinguishable since "an entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum." — U.S. at —, 109 S.Ct. at 1979.

## III.

As to the merits, we believe that a binding settlement was reached and should have been enforced.

A settlement is a contract, and once entered into is binding and conclusive. To determine whether a settlement was agreed to, we look first to the plain language of the agreement. *Kohl Indus. Park Co. v. County of Rockland,* 710 F.2d 895, 903 (2d Cir.1983).

The "settlement letter" of December 22 (signed by Luckanick and Janneh) conveys a clear message of intention to settle: "I [Janneh] agree to settle my case for three thousand dollars, ($3,000.00)." Earlier, the letter states that it marks the culmination of a negotiation process between opposing counsel Luckanick and Brady. Though Brady's subsequent letter of January 20, 1988, refers to Janneh's "offer," both attorneys contend that the prior negotiations indicated an acceptance and not an offer. If an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld. *Fennell v. TLB Kent Co.,* 865 F.2d 498, 502 (2d Cir.1989). At the least, Janneh's signature on the December 22 letter cloaked Luckanick with the power to settle the case for $3,000.

Because the settlement agreement did not provide any specific time for payment, the law implies a requirement to pay within a reasonable time. *In re Rio Grande Transport Inc.,* 770 F.2d 262, 264 (2d Cir. 1985). Although seven months elapsed before appellant informed the district court of the settlement agreement, GAF acted promptly to formalize the agreement, and the delay was properly attributable to Janneh's pending change of counsel. *See Bruce Realty Co. v. Berger,* 327 F.Supp. 507, 513 (S.D.N.Y.1971) (where a substantial part of the delay was caused by plaintiff's changes in counsel, lapse of almost a

---

**5.** As recently amended, the Federal Arbitration Act explicitly permits immediate appeals from orders giving litigation precedence over arbitration, such as orders refusing to stay an action.

9 U.S.C. § 15(a). Orders favoring arbitration, for example, granting a stay, are not immediately appealable. 9 U.S.C. § 15(b).

year in defendant's performance was probably reasonable).

Janneh's contention that the agreement should be avoided because it was signed under "civil pressure" is frivolous. The record is devoid of any evidence that Luckanick or GAF improperly coerced Janneh.

Accordingly, we reverse and remand to the district court with instructions to enforce the settlement agreement.