**SIERRA RUTILE LIMITED,**
Plaintiff–Appellant,

v.

**Shimon Y. KATZ, Michael Lobel, Jack A. Weintraub, Benjamin Bollag, Berisford International, PLC, Berisford, Inc., f/k/a Erlanger & Company, Inc., Erlanger Minerals & Metals Inc., Berisford Metals Corporation, Bomar Holdings Inc., Bomar Resources Holdings Inc., Comsup Commodities Inc., f/k/a Bomar Commodities Inc., Global Technology Group, Ltd., Bomar Commodities Ltd., Bomar Resources Ltd., A/S Bulkhandling, Eggerding & Co., Concores Trading Establishment, Patmar Trading Establishment, Curtis, Mallet-Prevost, Colt & Mosle, Ephraim Margulies, Howard Zuckerman, Patrice Klein, Tradeco International Inc., Ronnie Greenwald, Roland Schaer, David Fleischman, William Karon, John Does 1 through 20, John Doe Corporations 1 through 20, Defendants–Appellees.**

**No. 908, Docket 90–7849.**

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1991.

Decided June 25, 1991.

Ronald J. Offenkrantz, New York City (M. James Spitzer, Michael H. Smith, Spitzer & Feldman, P.C., of counsel), for plaintiff-appellant.

Herbert Stoller, New York City (Curtis, Mallet–Prevost, Colt & Mosle, George Weisz, Cleary, Gottlieb, Steen & Hamilton,

Leonard Weiner, of counsel), for defendants-appellees.

Before VAN GRAAFEILAND, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Sierra Rutile Limited ("Sierra") appeals from two orders entered in the United States District Court for the Southern District of New York (Keenan, *J.*). In the first order, the district court granted the motion of appellees to stay the action at bar pending the completion of arbitration ordered in a separate proceeding brought to compel arbitration. In the second order, the court held in abeyance Sierra's motion to remand the action at bar to the Supreme Court, New York County, from which it was removed, pending completion of the same arbitration.

On appeal, Sierra contends that the stay order, in conjunction with the remand order, is appealable under the collateral order doctrine or is appealable as an order having the practical effect of the grant or denial of injunctive relief. In the event that the orders are held not to be appealable, Sierra argues that the notice of appeal should be treated as a petition for a writ of mandamus, contending that mandamus is warranted under the circumstances of the case.

We hold that the stay order alone or in conjunction with the remand order fails to satisfy the requirements of the collateral order doctrine and is not appealable as an order effectively granting or denying injunctive relief. However, we conclude that the grant of the stay is inappropriate in this case and contravenes the district court's obligation to exercise its jurisdiction. Although the stay was not warranted, review by way of mandamus is inappropriate at this time. In the event the district court refuses to vacate the stay order and proceed with the action in the exercise of its jurisdiction, the circumstances then may be appropriate for the issuance of the writ of mandamus.

## BACKGROUND

The defendants in this action are past and present owners, directors, officers, employees and affiliates of Bomar Resources, Inc. ("Bomar"), and other persons and firms having past and present business relations with Bomar and Bomar's attorneys. Bomar is a trading company specializing in the marketing and selling of commodities in international trade. Sierra, a subsidiary of Nord Resources Corporation ("Nord"), is the owner of a concession in Sierra Leone, West Africa, for the mining of rutile, a mineral sand used for making pigments for paints and papers.

In 1982, Bomar approached Sierra for the purpose of becoming Sierra's exclusive sales agent. That year, an agreement was entered into between Sierra and Bomar, under which Bomar undertook to market and sell Sierra's entire production of rutile. The agreement provided that any controversies arising out of or based on an alleged breach of the agreement would be settled by arbitration. As the exclusive agent, Bomar found customers for Sierra's production of rutile and arranged transportation where necessary. The relationship lasted for over six years. In 1988, Sierra terminated the relationship in accordance with the terms of the agreement, effective December 31, 1988. Bomar alleges that after the termination of the exclusive sales agency, the parties entered into negotiations for a continuing sales agency relationship on a non-exclusive basis. The negotiations, however, failed when the parties could not agree about the commissions allegedly owed to Bomar for shipments of rutile delivered after the termination of the exclusive agency relationship but made under contracts executed before the termination.

In January, 1990, Sierra served a demand for arbitration on Bomar for putative misdeeds committed during the term of the exclusive agency agreement. Sierra sought in its demand for arbitration substantial damages for breach of agency, conversion of trust funds and assets, dilution

of Sierra's rutile with an inferior product resold for Bomar's own account, concealment of hidden profits and commissions, and self-dealing. Additionally, at the same time it sought arbitration in New York, Sierra petitioned *ex parte* a court located in Amsterdam, Holland, to restrain the imminent transfer of rutile previously entrusted to Bomar and stored in a warehouse in Amsterdam. The Dutch court issued an order restraining the transfer.

On February 8, 1990, Sierra filed a petition in the Southern District of New York to compel arbitration of all issues included in its demand for arbitration ("Action I"), pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"). Sierra also sought temporary and preliminary injunctive relief, seeking to restrain Bomar from taking possession of Sierra's rutile product then on the high seas aboard the M/V Havjo ("Havjo"), to enjoin Bomar from obtaining the proceeds from a Romanian letter of credit in the amount of $500,000 issued for a previous sale, and to prevent Bomar from dissipating its assets. The district court temporarily enjoined Bomar from interfering with the rutile product aboard the vessel and from drawing on the letter of credit.

On February 21, 1990, the court granted the petition for arbitration of all issues in Sierra's demand. However, the court found that the need for protection against interference with the rutile product aboard the Havjo was moot because the product had been delivered to its intended customer. The court also refused to preliminarily enjoin Bomar from drawing on the proceeds of the letter of credit and from dissipating its assets because Sierra had not demonstrated irreparable injury or likelihood of success on the merits of its claims. Additionally, crediting the representation of Shimon Katz, Bomar's president, that Bomar would be able to pay its debts from funds maintained in bank accounts located throughout the world, the court refused to grant broader injunctive relief.

On March 7, 1990, Bomar moved for reargument of the district court's decision. Bomar informed the court that "old" Bomar had changed its name to Brinc Limited ("Brinc") in December, 1989 and that Rivson International, Inc. ("Rivson"), an affiliate of "old" Bomar, had changed its name to Bomar Resources, Inc. (referred to as "new" Bomar). Bomar requested a modification of the court's February 21, 1990 Opinion and Order, withdrawing from arbitral consideration the issues relating to the letter of credit and the rutile stored in the Amsterdam warehouse, contending that the disputes over those issues are between "new" Bomar and Sierra and that arbitration of those disputes, therefore, would be futile. In the alternative, Bomar sought to enjoin Sierra from asserting that "new" Bomar is liable for any obligation of "old" Bomar in the event of voluntary participation by "new" Bomar in the arbitration.

By order dated June 12, 1990, the district court denied the motion for reargument on the ground that since "Local Rule 3(j) requires a movant to set forth 'concisely the matters or controlling decisions which counsel believes the Court *has overlooked[,]* ... [presumably] the Court was apprised of all the known pertinent facts when it rendered its initial decision." However, finding the information concerning Bomar's corporate restructuring pertinent to Sierra's prior request for a preliminary injunction regarding the dissipation of Bomar's assets, the court scheduled an evidentiary hearing for August 7, 1990.

Meanwhile, on June 4, 1990, "new" Bomar and Brinc had filed an action in the Southern District against Sierra and various officers and agents of Sierra for tortious interference with business relations, willful disparagement, conversion and violations of section 487 of New York Judiciary law ("Action II"). The gravamen of this action is that, following the termination of the agency agreement, Sierra and its officers and agents devised a scheme to drive plaintiffs out of business and, to that end, made disparaging statements about plaintiffs to plaintiffs' customers. The ac-

tion was assigned to Judge Keenan as a "related case."

On July 5, 1990, Sierra commenced in the New York State Supreme Court the action giving rise to this appeal. Among other claims alleged against the various defendants-appellees were claims based on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, breach of fiduciary duty and constructive trust and conversion ("Action III"). These claims arise out of the dealings between Sierra and Bomar. On July 24, 1990, this action was removed to the Southern District of New York, see 28 U.S.C. § 1446(a), and likewise was assigned to Judge Keenan.

Apparently, the evidentiary hearing on Sierra's application for a preliminary injunction in Action I never took place. Instead, the attorneys for "old" Bomar and "new" Bomar agreed to the entry of an order restraining and enjoining the transfer of assets of both corporations. On August 7, 1990, the date set for the evidentiary hearing, counsel for the parties appeared before Judge Keenan for the purpose of presenting the agreed upon injunction order for the court's approval. At that time, counsel for the defendants orally moved for a stay of Action II and Action III. Sierra objected to the application on the ground that the defendant in Action I was not the same as the defendants in Action III, and therefore, there was no justification for staying Action III pending the outcome of arbitration in Action I. Sierra also informed the court that it intended to move for a remand of Action III.

On August 16, 1990, the district court granted the stay of Action II and Action III pending the arbitration ordered in Action I. Shortly thereafter, Sierra moved to remand Action III to the New York State Supreme Court on the grounds that not all of the defendants had joined in the notice of removal; that certain of the state law claims were against defendants over whom the court lacked subject matter jurisdiction; and that the Court should not exercise pendent jurisdiction over state law claims that predominate over federal claims. On Sep-

tember 4, 1990, the district court determined that the defendants "need not respond to [Sierra's] motion to remand until the stay is lifted." The motion was ordered to be held in abeyance pending completion of arbitration. On September 14, 1990, Sierra timely filed a notice of appeal as to the order staying Action III, the action at bar. It is unclear whether a notice of appeal was filed as to the stay of Action II.

## DISCUSSION

Sierra is appealing from an order granting a stay of district court proceedings pending the completion of an arbitration involving a party that is not a party to the stayed action. Sierra also appeals from an order holding in abeyance a motion to remand the stayed action to state court. Generally, an appeal from these orders would be barred by the statutory requirement that the order appealed from must be final. See 28 U.S.C. § 1291 (1988). There are, however, a few narrow statutory and judicially-constructed exceptions to the finality rule. Sierra urges that the orders at issue fall under one or more of these exceptions. We begin our analysis of the appealability issue by examining a recent amendment to the FAA.

■ In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), the Court held that the denial of a motion for a stay of court proceedings pending arbitration was not appealable under the collateral order exception to the final judgment rule or as an order that has the effect of granting or denying an injunction. *Id.* at 277–78, 108 S.Ct. at 1137. Because the facts of that case limited the Court's discussion to the denial of a stay, it was not clear whether we had jurisdiction to review orders granting a stay of legal proceedings pending arbitration. Soon after the *Gulfstream* decision, Congress amended the FAA, by adding section 16 (added by Pub.L. No. 100–702, § 1019(a), 102 Stat. 4671 (Nov. 19, 1988)). The amendment clarified our au-

thority to hear appeals in relation to stays pending arbitration. Section 16 allows for an appeal from an interlocutory order "refusing a stay of any action under section 3 [of the FAA]." 9 U.S.C. § 16(a)(1)(A). In addition, that section provides that "an appeal may not be taken from an interlocutory order ... granting a stay of any action under section 3 [of the FAA]." *Id.* § 16(b)(1). Section 3 of the FAA provides for the grant of a stay of court actions, upon application of a party, if the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under ... an agreement...." Therefore, where the district court grants a stay of court proceedings in which the issues involved are referable to arbitration under an agreement, we lack jurisdiction to hear the appeal, absent certification under 28 U.S.C. § 1292(b). *See Jeske v. Brooks*, 875 F.2d 71, 73 (4th Cir.1989). Here, the district court did not certify that the "order[s] involve[ ] ... controlling question[s] of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

■ Section 16 of the FAA does not, however, apply to this case, because the issues involved in the court action are not referable to arbitration under any agreement. *See Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir.1964) (holding that FAA was inapplicable where parties involved in action are not parties to an arbitration agreement under which issues are referable to arbitration). The parties to Action III, Sierra and the various employees, officers, directors and affiliates of Bomar, are not parties to an agreement under which disputes are referable to arbitration. Unlike Action I, in which Sierra sought arbitration under an arbitration clause of its exclusive agency agreement with Bomar, Action III is not governed by the provisions of sections 3 or 16 of the

FAA. In the absence of a basis for jurisdiction over these interlocutory orders under the FAA, the orders may be appealable only if they meet the criteria of the exceptions to the "final judgment" rule or if they have the effect of an injunction.

■ One exception to the requirement that appeals may be taken only from final judgments is the collateral order doctrine. *See Janneh v. GAF Corp.*, 887 F.2d 432, 434 (2d Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990); *McDonnell Douglas Finance v. Pennsylvania Power & Light Co.*, 849 F.2d 761, 763 (2d Cir.1988). Under that doctrine, an interlocutory order will be appealable if the order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action," and is "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (footnote omitted); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Janneh*, 887 F.2d at 434. We have held that the grant or denial of a stay pending arbitration does not fall within the collateral order doctrine. *See Steele v. L.F. Rothschild & Co., Inc.*, 864 F.2d 1, 3 (2d Cir.1988); *McDonnell Douglas*, 849 F.2d at 764.

Sierra urges us to conclude that under the circumstances of this case the district court's stay order satisfies the prerequisites of the collateral order exception. The failure to consider the motion to remand in conjunction with the stay order, it is argued, conclusively determines the district court's jurisdiction to the exclusion of state court jurisdiction. We fail to see how the district court's decision to decide at a later time the question of jurisdiction conclusively determines the issue; rather, the district court simply postponed a determination of the remand motion. *Cf. Chasser v. Achille Lauro Lines*, 844 F.2d 50, 55 (2d Cir.1988) (order denying motion to enforce forum-selection clause not appealable because "the right to secure adjudication in a particular forum is not lost simply because enforcement is postponed."). We need not decide

whether the stay order satisfies the second and third prongs of the collateral-order test, because the failure of one prong precludes us from concluding that the stay order is appealable under that test.

■ Sierra also contends that we have jurisdiction because the stay order has the practical effect of an injunction. Sierra points to *Gulfstream*, in which the Court noted that 28 U.S.C. § 1292(a)(1) will continue to provide appellate jurisdiction over orders that grant or deny injunctions and over orders that have the practical effect of granting or denying injunctions and will have " ' "serious, perhaps irreparable, consequence[s]," ' " 485 U.S. at 287–88, 108 S.Ct. at 1143 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955))). After the recent amendment to the FAA, *Gulfstream* is inapplicable to orders staying actions that are governed by section 3, and therefore section 16, of the FAA. However, because the orders at issue are not governed by the FAA, we may examine these orders to see if they have the practical effect of granting or denying injunctive relief.

Without undertaking an analysis of all factors necessary for a determination of whether a stay has the practical effect of an injunction, we note that the grant of the stay in this case cannot be found, even under the most generous evaluation, to have the practical effect of an injunction. Action III is an action for treble damages under RICO and for damages under various state law claims for acts committed by appellees. No continuing misconduct is alleged; in fact, all of the alleged misconduct on the part of appellees occurred in the past. Sierra argues that the stay has the practical effect of both granting and denying injunctive relief because the failure to consider the remand in conjunction with the stay of the action precludes Sierra from applying for injunctive relief to prevent the various appellees from transferring and dissipating assets. Sierra has not asked for injunctive relief in its complaint, and it

cannot circumvent appealability requirements simply by claiming that it now intends to apply for such relief. *See Abish v. Northwestern Nat'l Ins. Co.*, 924 F.2d 448, 452 (2d Cir.1991) ("this *post hoc* contention is apparently little more than a ruse to establish appellate jurisdiction.").

■ Therefore, because the stay order neither meets the requirements of the collateral order doctrine nor has the practical effect of an injunction, we lack jurisdiction to hear the appeal from the order granting the stay pending arbitration. Sierra has asked, in the event we conclude (as we do) that the appeal must be dismissed for lack of appellate jurisdiction, that we treat the notice of appeal as a petition for writ of mandamus. We are permitted to treat it as such. *Seguros Banvenez S.A. v. S/S Oliver Drescher*, 715 F.2d 54, 56 n. 1 (2d Cir.1983).

Under 28 U.S.C. § 1651(a), the All Writs Act, "a Court of Appeals is empowered to 'issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[ ] and agreeable to the usages and principles of law.' " *In re Von Bulow*, 828 F.2d 94, 96 (2d Cir.1987) (quoting § 1651(a)). "[S]uch extraordinary writs are used in aid of appellate jurisdiction only to confine an inferior court to a lawful exercise of its prescribed authority, or to compel it to exercise its authority when it is its duty to do so." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 18, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983); *see also Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *United States v. Coonan*, 839 F.2d 886, 889 (2d Cir.1988); *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987). In fact, one of "the clearest traditional" uses of mandamus is to compel a court "to act when it had no power to refuse [to act]." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure *Jurisdiction* § 3933, at 218–19 (1977). It cannot be doubted that "a stay [of court proceedings] is as much a refusal to exer-

cise federal jurisdiction as a dismissal [of those proceedings]." *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943. Clearly, however, there are numerous circumstances when the stay of court proceedings does not amount to an impermissible abdication of authority on the part of the district court.

As mentioned previously, the authority to stay proceedings pending arbitration in this case does not stem from the provisions of the FAA. *See Nederlandse,* 339 F.2d at 441 ("[g]ranting of the stay cannot be justified under the terms of the [Federal] Arbitration Act. Defendants are not parties to the arbitration agreement. The issues of the present action are not referable to arbitration between the parties."); *see also In re Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir.1989). Nonetheless, we have recognized that the district courts have "inherent power" to grant stays in certain circumstances. *See Nederlandse,* 339 F.2d at 441. It is appropriate, as an exercise of the district court's inherent powers, to grant a stay "where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Id.*

■ Additionally, when the district court stays its proceedings on the ground that the resolution of issues in arbitration may be determinative of issues in the case, the court is required to tailor its stay so as not to prejudice the non-moving litigant unduly. *Id.* at 442 (the district court order "should expressly provide that the [nonmovant] may move to vacate the stay if the arbitration proceedings have not been concluded after a stated and limited period of time."). Moreover, the movant bears a heavy burden of showing necessity for the stay. *Id.* at 442 (the movant must "demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship."); *see also Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1083 (Fed.Cir.1989). In this case, the district court failed to confine its stay so as not to prejudice Sierra and never required appellees to show necessity for the stay or that Sierra would not be harmed by its relative indefiniteness.

More importantly, though, it is apparent that the district court erred in staying its proceedings pending arbitration because it believed that the resolution of issues in arbitration would have some effect on the court proceedings. During the August 7, 1990 hearing set for a determination of whether Sierra was entitled to injunctive relief against Bomar in Action I, appellees argued that Action III should be stayed because the action "is driven by the results in the arbitration." The district court judge inquired, "[t]he whole thing really turns on this arbitration, doesn't it?", while counsel for Sierra was arguing against a stay of Action III. Three days later, after reviewing letter briefs submitted by the parties and in which appellees argued that "none of [Sierra's] claims in [Action III] can succeed unless [Sierra] also succeeds in the pending arbitration," the court stayed the action.

The pending arbitration, however, cannot justify the refusal to exercise jurisdiction over the parties and issues in this case. The difference between the parties and issues in the court action and in the arbitration undermines the rationale that the arbitration will have an effect on the stayed action. *Cf. Benjamin v. Traffic Executive Ass'n E.R.R.,* 869 F.2d 107, 110 (2d Cir. 1988) (arbitral determination given collateral estoppel effect in subsequent federal court action where arbitral procedures were sound and where parties had a full and fair opportunity to litigate). We think that the claims against the various defendants here will be largely if not wholly unaffected by the resolution of claims between Sierra and Bomar in the arbitration proceeding. Not only are the affiliated parties, named as defendants in Action III, different from Bomar Resources, Inc., the party to the arbitration, but the former have asserted continuously that they will not be bound by any arbitral resolution. Finally, Sierra has asserted additional, sig-

nificant claims in the action at bar that are not cognizable in arbitration. For instance, the arbitration does not involve the claim concerning the ownership of approximately 3,126 tons of rutile entrusted to Bomar and stored in a warehouse as well as the claim that the rutile stored within that warehouse was diluted for the purpose of transferring an excess quantity for the benefit of some of the defendants.

We conclude that under these circumstances the district court was obligated to exercise its jurisdiction and was without authority to decline to hear the case. However, the issuance of a formal writ of mandamus is unnecessary at this juncture. Should the district court continue in its refusal to vacate the stay and to exercise jurisdiction over this action upon proper application, "such may be the circumstances under which a petition for mandamus might be appropriately ... granted." *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.,* 761 F.2d 198, 204 (5th Cir.1985); *see also Nixon v. Richey,* 513 F.2d 427, 430 (D.C.Cir.1975); *McDonnell Douglas Corp. v. Polin,* 429 F.2d 30, 31 (3d Cir.1970). Although mandamus is reserved for exceptional cases, *see Von Bulow,* 828 F.2d at 96 (citation omitted), we believe that a continued refusal to hear this case may lead to a situation in which review by way of mandamus may be appropriate.

## CONCLUSION

For the foregoing reasons, the appeal is dismissed. The petition for writ of mandamus is denied without prejudice for the reasons and on the conditions stated in this opinion.

MAHONEY, Circuit Judge, concurring:

Since I agree with my colleagues that the appeal should be dismissed, and with much of the majority opinion, I write in concurrence.

I disagree, however, with the majority's conclusion that a failure by the district court to exercise its jurisdiction upon remand would necessarily be so palpable an error as probably to warrant mandamus. As the majority acknowledges, both "old" Bomar and "new" Bomar have agreed to the entry of an order restraining and enjoining the transfer of the assets of both corporations. Further, any arbitration decision as to "old" Bomar is likely to have collateral estoppel effect as to "new" Bomar, the transferee of the assets of "old" Bomar. *See C.H. Sanders Co. v. BHAP Hous.Dev.Fund Co.,* 903 F.2d 114, 121 (2d Cir.1990); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4462, at 548 and 555 (1981). Accordingly, it is not apparent to me that the district court clearly erred, as the majority puts it, in "believ[ing] that the resolution of issues in arbitration would have some effect on the court proceedings."

I agree with the majority that the district court did not "tailor its stay so as not to prejudice the non-moving litigant unduly." Further, it may well be that any arbitration decision will not collaterally estop the individual defendants. *See* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4460, at 533–34 (1981); *cf. C.H. Sanders Co.,* 903 F.2d at 121. In sum, the district court may well have erred, and perseverance in its present course might constitute further error, depending upon the status of the litigation and arbitration upon remand. It is not obvious to me, however, that such perseverance would warrant mandamus (which is reserved for "the most egregious of discretionary abuses," *Coastal (Bermuda) Ltd. v. E. W. Saybolt & Co.,* 761 F.2d 198, 203 (5th Cir. 1985)), especially in view of the "strong national policy favoring arbitration," *id.* at 203 n. 6.

I also have a somewhat differing view from the majority concerning the relationship of the FAA to this appeal. The majority rules that "[s]ection 16 of the FAA does not ... apply to this case because the issues involved in the court action are not referable to arbitration under any agreement," as required by section 3 of the FAA. The majority cites for this position *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandsten Co.,* 339 F.2d 440, 441 (2d Cir.1964), which it describes as "holding FAA inapplicable where parties involved in action are not parties to an arbitration agreement under which issues are referable to arbitration."

There is no occasion, however, for us to construe section 3 of the FAA in deciding this appeal. Had the district court invoked section 3 in granting its stay, then section 16(b)(1) of the FAA would explicitly bar any appellate jurisdiction here as to that ruling. Both sections 3 and 16 are inapplicable, however, because the litigants did not seek, and the district court did not purport to provide, relief pursuant to section 3 of the FAA. Rather, as the majority recognizes, the district court acted pursuant to its inherent powers. *See Nederlandse*, 339 F.2d at 441–42. I note, finally, that despite *Nederlandse*, it is no longer clear that a section 3 stay is available only where the parties to a litigation are parties to an arbitration agreement, so long as there is presented "any issue referable to arbitration under an agreement in writing for such arbitration" within the meaning of section 3 and the parties to the litigation would be bound by the arbitral resolution of that issue. *See Morrie & Shirley Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 405–08 (7th Cir.1990); *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1107–08 (2d Cir.), *cert. denied,* —— U.S ——, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990).