**DESKTOP DIRECT, INC., a Utah corporation, Plaintiff–Appellee,**

v.

**DIGITAL EQUIPMENT CORPORATION, a Massachusetts corporation, Defendant–Appellant.**

**No. 93–4024.**

United States Court of Appeals, Tenth Circuit.

May 17, 1993.

---

Laurence R. Hefter and David M. Kelly of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, and David K. Isom and J. Preston Stieff of David K. Isom & Associates, Salt Lake City, UT, for defendant-appellant.

H. Ross Workman and Larry R. Laycock of Workman, Nydegger & Jensen, and John Paul Kennedy, Salt Lake City, UT, for plaintiff-appellee.

Before LOGAN, ANDERSON and TACHA, Circuit Judges.

LOGAN, Circuit Judge.

This matter is before us on defendant Digital Equipment Corporation's motion for a stay of the district court's order entered January 5, 1993. We have considered the motion, the brief in support thereof, plaintiff Desktop Direct, Inc.'s response, and defendant's reply memorandum, which we grant leave to be filed.

I

Plaintiff filed suit in district court alleging trademark infringement and unfair competition by defendant. The parties agreed on a settlement before trial, and plaintiff consequently sought and received a voluntary dismissal of the suit. Subsequently, however, plaintiff moved to vacate the dismissal and rescind the settlement agreement, contending that defendant had procured the agreement by fraud and misrepresentation. The district court granted the motion on January 5, 1993, finding that "a fact finder could determine that defendant failed to disclose material facts to plaintiff during settlement negotiations which would have resulted in rejection of the settlement offer by the plaintiff." Plaintiff's notice of dismissal was therefore permitted to be withdrawn, and the settlement agreement rescinded. The district court denied defendant's later motion to reconsider and for a stay pending appeal.

Before addressing the merits of defendant's stay motion addressed to this court, as

a threshold matter we must consider whether we have jurisdiction to consider an appeal from the district court's order.

## II

■ Under 28 U.S.C. § 1291, this court has "jurisdiction of appeals from all final decisions of the district courts of the United States." A final decision is "a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 497, 109 S.Ct. 1976, 1977, 104 L.Ed.2d 548 (1989) (quotations omitted). Here, because the district court's order not only set aside the settlement but also permitted withdrawal of the notice of dismissal, the case is now set for trial, and "the order ensures that litigation will continue in the District Court." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). The order is therefore not final for purposes of § 1291.

This much defendant concedes, but it argues that the case falls within the long-recognized "collateral order" exception to the final judgment requirement. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). "[T]o fall within the *Cohen* exception, an order must satisfy at least three conditions: It must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Lauro Lines*, 490 U.S. at 498, 109 S.Ct. at 1978 (quotations omitted). Defendant argues that this district court order satisfies each of these criteria for appealability, citing cases from the Eleventh, Fifth, and Second Circuits that so hold.[1] With due respect to our sister circuits, we disagree.

### A

■ The first requirement is that the order conclusively determine the validity and enforceability of the settlement agreement. The language of the district court is somewhat cryptic, ruling only that a fact-finder "could" have a basis for finding misrepresentation. From that we are unsure whether the district court contemplates submitting this issue to a jury. But we conclude that it does not because its order specifically grants plaintiff's motion to *rescind* the agreement, and it reinstates the suit against defendant. We consider the district court's decision therefore as "the final word on the subject addressed," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12–13 n. 14, 103 S.Ct. 927, 935 n. 14, 74 L.Ed.2d 765 (1983), thus satisfying the first requirement for appealability.

### B

■ The second element of the test for appealability has two parts: The issue must be "important," and "completely separate from the merits of the action." Considering separateness first, in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court held that the question of a defendant's qualified immunity was "conceptually distinct from the merits of the plaintiff's claim," *id.* at 527, 105 S.Ct. at 2816, notwithstanding the fact that "the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief," *id.* at 528, 105 S.Ct. at 2816. The same is true in this case. Plaintiff alleges that during settlement negotiations defendant misrepresented the date it acquired knowledge of plaintiff's trademark. Although these contentions may have some relevance to the underlying claim, the complaint of misrepresentation during settlement negotiations is "conceptually distinct" from the trademark violation charges.

### C

■ The question of the "importance" of the issue is more difficult. It is also inter-

1. *See Forbus v. Sears, Roebuck & Co.*, 958 F.2d 1036, 1039–40 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992); *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 219–20 (5th Cir.1991); *Janneh v. GAF Corp.*, 887 F.2d 432, 434–36 (2d Cir.1989), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990); *see also Chaput v. Unisys Corp.*, 964 F.2d 1299, 1301 (2d Cir.1992).

twined with the third *Cohen* requirement that the issue be effectively unreviewable on appeal from a final judgment. The district court's decision setting aside the settlement agreement could be reviewed on appeal after trial. We could set aside a decision on the merits in plaintiff's favor on the basis that the settlement agreement was valid and enforceable against plaintiff. Only by characterizing plaintiff's expectation that no trial will occur after entering a settlement agreement as "a right not to be tried" can we say it is unreviewable after a final judgment. Thus, we must determine whether this expectation contemplated in the settlement agreement is important enough—a matter of such independent significance—that it must be vindicated by allowing an interlocutory appeal absent a constitutional or statutory basis. Here we part company with our sister circuits, and agree with the position of Judge Cox, dissenting in *Forbus v. Sears, Roebuck & Co.*, 958 F.2d 1036 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992).

In *Janneh v. GAF Corp.*, 887 F.2d 432 (2d Cir.1989), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990), the Second Circuit held that a district court order refusing to enforce a settlement agreement

is "important" because the order involves the deprivation of significant rights, namely, GAF's bargained-for right to avoid trial by enforcing the settlement agreement. That right implicates our nation's strong judicial and public policies favoring out-of-court settlement. Litigants, courts, and Congress view settlement as a positive force, indispensible to judicial administration. Foregoing formal courtroom procedures, including discovery, trial, briefs, and arguments, brings substantial benefits to the parties. The costs of litigation are reduced and crowded dockets are relieved.

*Id.* at 435 (citation, quotation, and footnotes omitted). Although we agree that as a general proposition encouragement of out-of-court settlements is desirable, we believe Supreme Court precedent takes a narrower view of which interests are "important" enough to fall within the narrow confines of the *Cohen* doctrine.

Only when there is an explicit constitutional or statutory guarantee or a compelling public policy rationale does the Supreme Court permit an interlocutory appeal. Thus, the Court recently held that a district court's denial of Eleventh Amendment immunity is immediately appealable under the collateral order rule, reasoning that "a motion by a State or its agents to dismiss on Eleventh Amendment grounds involves a claim to a *fundamental constitutional protection* whose resolution generally will have no bearing on the merits of the underlying actions." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, —— U.S. ——, ——, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993) (emphasis added) (citation omitted). Similarly, in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court permitted immediate appeal of a denial to dismiss an indictment on double jeopardy grounds, because of the safeguards specifically ensured by the Double Jeopardy Clause. *Id.* at 659, 97 S.Ct. at 2040. In *Moses Cone* the Court ruled that a district court order *granting* a stay pending state proceedings is a final order; it also held that such an order would be appealable under *Cohen*, because the res judicata effects of the eventual state judgment would render a later federal appeal meaningless. 460 U.S. at 11–13, 103 S.Ct. at 934–35. But later, in *Gulfstream* the Court concluded that a *denial* of a motion to stay a federal case in light of pending state proceedings was "inherently tentative," and therefore not within the *Cohen* exception. 485 U.S. at 278, 108 S.Ct. at 1137.

The Supreme Court has rejected interlocutory appeals in a variety of circumstances when there is no underlying constitutional or statutory right. In *Lauro Lines*, the Court held that an order denying a dismissal motion based on a forum-selection clause is not immediately appealable under *Cohen*. 490 U.S. at 498, 109 S.Ct. at 1978. In a separate concurrence, cited with approval in the even more recent *Metcalf & Eddy* decision, Justice Scalia found the importance requirement dispositive:

The reason we say that the right not to be sued elsewhere than in [the specified forum] is adequately vindicable by merely reversing any judgment obtained in viola-

tion of it is, quite simply, that the law does not deem the right *important enough* to be vindicated by, as it were, an injunction against its violation obtained through interlocutory appeal. The importance of the right asserted has always been a significant part of our collateral order doctrine.

*Id.* 490 U.S. at 502, 109 S.Ct. at 1980 (Scalia, J., concurring) (quotation and citation omitted). In *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989), the Court held that a violation of grand jury secrecy requirements did not give rise to a right to an interlocutory appeal. In *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), the Court held that "a right not to stand trial in a civil suit is not an essential aspect of a claim of immunity under the principle of specialty" applicable to extradition cases, *id.* at 526, 108 S.Ct. at 1951, and that denial of a motion to dismiss based on *forum non conveniens* is likewise not immediately appealable, *id.* at 529, 108 S.Ct. at 1953. In *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), the Court held that "orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal." *Id.* at 440, 105 S.Ct. at 2765. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), rejected the immediate appealability of an order passing on a request for class certification. *Id.* at 469, 98 S.Ct. at 2458. In *United States v. Mac-Donald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), the Court refused to permit an interlocutory appeal premised on a violation of the Speedy Trial Clause.

The only situation that the Supreme Court has found important enough to allow an interlocutory appeal in the absence of a constitutional or statutory guarantee involves a district court's denial of qualified immunity for a public-official defendant. In doing so, in *Mitchell v. Forsyth* the Court emphasized the unique interests protected by the qualified immunity doctrine:

> The conception animating the qualified immunity doctrine as set forth in *Harlow v. Fitzgerald,* 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982), is that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Id.,* at 819 [102 S.Ct. at 2738], quoting *Pierson v. Ray,* 386 U.S. 547, 554 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288] (1967). As the citation to *Pierson v. Ray* makes clear, the "consequences" with which we were concerned in *Harlow* are not limited to liability for money damages; they also include "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow,* 457 U.S., at 816 [102 S.Ct. at 2737]. Indeed, *Harlow* emphasizes that even such pretrial matters as discovery are to be avoided if possible, as "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.,* at 817 [102 S.Ct. at 2737–38].

472 U.S. at 525–26, 105 S.Ct. at 2815. The Court held that because qualified immunity "is an *immunity from suit* rather than a mere defense to liability," immediate appeal was necessary to vindicate that right. *Id.* at 526, 105 S.Ct. at 2815.

The three circuit court decisions that have permitted interlocutory appeals of decisions setting aside settlement agreements have equated the immunity from suit implied by settlement to the immunity from suit that was the subject of *Forsyth.* The *Janneh* court declared that "[t]he asserted right not to go to trial can appropriately be based on a contract between the parties." 887 F.2d at 436. We think this is too expansive a reading of the "right not to go to trial" in the context of the *Cohen* doctrine.

The Supreme Court has admonished courts to be careful "not to play word games with the concept of a right not to be tried." *Midland Asphalt,* 489 U.S. at 801, 109 S.Ct. at 1499 (quotation omitted). "This question is difficult because in some sense, all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial." *Van Cauwenberghe,* 486 U.S. at 524, 108 S.Ct. at 1950. We must therefore

"examine the nature of the right asserted with special care to determine whether an essential aspect of the claim is the right to be free of the burdens of a trial." *Id.* at 525, 108 S.Ct. at 1951, *see also Mitchell,* 472 U.S. at 551, 105 S.Ct. at 2828 (Brennan, J., concurring in part and dissenting in part) ("To hold that a given legal claim is in fact an immunity from trial is to except a privileged class from undergoing the regrettable cost of a trial. We should not do so lightly."). *Mac-Donald* illustrates the narrowness of this analysis. There, the Court held that the Speedy Trial Clause does not confer a "right not to be tried," because "[i]t is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial." 435 U.S. at 861, 98 S.Ct. at 1553. More recently, *Midland Asphalt* held that "[a] right not to be tried in the sense relevant to the *Cohen* exception rests upon *an explicit statutory or constitutional guarantee* that trial will not occur." 489 U.S. at 801, 109 S.Ct. at 1499 (emphasis added). Although both *MacDonald* and *Midland Asphalt* were criminal cases, they demonstrate the strict reading of the "right not to go to trial" necessary in cases like this one to meet the standard for appealability under *Cohen.*

We do not see how a private settlement contract is significantly different from the contracted forum selection clause the Supreme Court refused to enforce through interlocutory appeal in *Lauro Lines.* Forcing parties to go through what may turn out to be a wasted trial is just one of the inevitable costs of the final judgment rule.

Expansion of federal court jurisdiction in the absence of congressional authority is ground best trod lightly. The Supreme Court said it well many years ago in *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955):

The Congress is in a position to weigh the competing interests of the dockets of the trial and appellate courts, to consider the practicability of savings in time and expense, and to give proper weight to the effect on litigants. When countervailing considerations arise, interested parties and organizations become active in efforts to modify the appellate jurisdiction. This Court, however, is not authorized to ap-

prove or declare judicial modification. It is the responsibility of all courts to see that no unauthorized extension or reduction of jurisdiction, direct or indirect, occurs in the federal system.

*Id.* at 181, 75 S.Ct. at 252–53 (footnote omitted).

 The *Cohen* doctrine was created only to fill an apparently unintentional void left by Congress in 28 U.S.C. §§ 1291 & 1292, and should not be expanded without compelling justification. A claimed right to avoid litigation based on a private contract to that effect does not meet this standard. Because the district court's order is not appealable before final judgment, we hold that we have no jurisdiction over this appeal, and the motion for stay must be denied.

APPEAL DISMISSED. The mandate shall issue forthwith.