Abelina Marquez TORRES and Fernando Guzman Marquez, Plaintiffs,

v.

Richard COSTICH and Costich Brothers, Defendants.

No. 92–CV–6450L.

United States District Court, W.D. New York.

Aug. 22, 1996.

Peter O'Brian Dellinger, Helen E. Reagan Wight, Farmworkers Legal Services of New York, Inc., Brian F. Curran, Rochester, NY, for plaintiffs.

Gerald L. Paley, Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, for defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

### *INTRODUCTION*

Plaintiffs, the widow and son of Heberto Guzman Ortiz ("Guzman"), commenced this action on October 6, 1992, to recover damages for Guzman's death in an accident in 1992, while Guzman was working as a laborer on defendants' farm. Plaintiffs asserted a claim under Migrant and Seasonal Agricultural Worker Protection Act ("AWPA" or "the Act"), 29 U.S.C. § 1801 *et seq.*, and a claim under New York law for wrongful death.

The parties entered into a stipulation of settlement that was executed on October 16, 1995. On October 23, 1995, I signed an order approving the settlement and entering judgment in favor of plaintiffs in the amount of $150,000. Among other things, the order stated that "defendants are ordered to pay to plaintiffs the sum of $10,000 in cash no later than November 12, 1995 ..." The order also stated that "[t]his Court shall retain jurisdiction over the parties for the purposes of enforcing this Order and the terms of the Stipulation of Settlement." Based upon the settlement, the case was then closed.

Plaintiffs have now moved to enforce the settlement agreement. Plaintiffs allege, and defendants admit, that defendants have not paid any part of the $10,000 that they were ordered to pay to plaintiffs.

Defendants have cross-moved to vacate the settlement agreement, either in its entirety, or that portion of the agreement that provides for the $10,000 payment by defendants to plaintiffs. The basis for defendants' motion is that, although the settlement agreement says nothing about this subject, it was "understood" by the parties that the $10,000 payment was to be paid by the State Insurance Fund ("the Fund"). The Fund was not a party to plaintiffs' action in this court, but was the defendant in a declaratory judgment action by defendants in state court. Defendants state that the Fund had agreed to pay the $10,000 in exchange for releases from defendants as a settlement of the declaratory judgment action. Defendants allege that the Fund has now refused to pay the $10,000,

and that defendants are financially unable to make the payment themselves.

## DISCUSSION

### I. Enforcement of the Settlement Agreement

Under the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), a federal court has jurisdiction to enforce a settlement agreement "only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement." *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir.1996) (citing *Kokkonen*, 511 U.S. at ——, 114 S.Ct. at 1677). There is no question that both of those grounds for jurisdiction exist here. My October 23, 1995 order expressly contained the terms of the settlement and ordered defendants to pay plaintiffs $10,000. It also expressly stated that the court retained jurisdiction to enforce the settlement.

"A settlement, once reached, is a binding contract." *Reich v. Best Built Homes, Inc.*, 895 F.Supp. 47, 49 (W.D.N.Y. 1995) (citing *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir.1989), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Accordingly, a "settlement agreement is to be construed according to general principles of contract law." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994).

"It is settled that 'when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add or vary the writing.'" *AFA Protective Sys., Inc. v. Lincoln Sav. Bank, FSB*, 194 A.D.2d 509, 598 N.Y.S.2d 543, 544 (2d Dep't 1993) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990)).

In accordance with this rule, then, extrinsic or parol evidence may be admitted to explain a writing only when the terms of the writing are ambiguous. *Investors Ins. Co. of America v. Dorinco Reinsurance Co.*,

917 F.2d 100, 104 (2d Cir.1990). As long as the terms of the contract are unambiguous, extrinsic evidence will be precluded. *Id.*; *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 896 (2d Cir.1976). If the language of the contract is clear and unambiguous, a court can interpret the contract as a matter of law. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989). Whether an ambiguity exists in a contract is a question of law to be resolved by the Court. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 149 (2d Cir.1993); *Curry Rd., Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990); *Van Wagner Advertising Corp. v. S & M Enters.*, 67 N.Y.2d 186, 191, 501 N.Y.S.2d 628, 492 N.E.2d 756 (1986).

The language of the settlement agreement, and of the order incorporating its terms, is not ambiguous in the least. The stipulation of settlement states that "[d]efendants will pay to plaintiffs the sum of $10,000 in cash no later than November 12, 1995." Nothing could be clearer.

There is also nothing to suggest any ambiguity concerning whether the $10,000 was to be paid by the Fund. The stipulation states that

> [d]efendants assign to plaintiffs their rights and claims under any insurance policies issued by Farm Family Mutual Insurance Company . . ., provided however that defendants shall retain their right to seek recovery of their attorneys fees and litigation costs and any money paid by defendants in the settlement of this action from Farm Family Mutual Insurance Company
> . . .

Nowhere in the stipulation or in my order, however, is there any suggestion that the settlement was contingent upon the Fund paying the $10,000 that defendants agreed to pay to plaintiffs. Under the previously recited principles of contract interpretation, then, any evidence that such an arrangement was "understood" by the parties to be a part of the settlement is inadmissible. *See Reich*, 895 F.Supp. at 49–50 (defense counsel's assertion that during settlement negotiations he had qualified terms of settlement agreement as subject to his client's approval, even

if true, did not negate enforceability of agreement, since agreement "contain[ed] not even a hint" that terms of settlement were subject to client's ratification).

Defendants also contend that plaintiffs were supposed to provide them with releases from liability. That too, however, is completely absent from the stipulation and from my order. Furthermore, plaintiffs state that although neither the stipulation nor my order obligates them to give releases to defendants, they are willing to do so upon payment of the $10,000 by defendants.

In short, both the stipulation of settlement and my October 23, 1995 order clearly and unambiguously require defendants to pay plaintiffs $10,000 in cash, and plaintiffs are entitled to enforcement of the settlement. Defendants may seek to pursue whatever remedies are available to them against the Fund, but they have presented no reason not to enforce the settlement agreement, much less to vacate it.

In their motion, plaintiffs request the court to enter an order enjoining defendants from failing to pay $10,000 to plaintiffs within thirty days. In my view, that is not the best remedy in this case. The court has already ordered defendants to pay plaintiffs $10,000, and simply reordering them to do so would accomplish little. Instead, I believe it would be wisest to enter judgment for plaintiffs in the amount of $10,000. Plaintiffs may then take whatever steps are available to them to enforce the judgment.

*II. Interest*

■ Plaintiffs also request interest on the $10,000 from November 12, 1995, the original deadline for defendants to pay plaintiffs. Defendants contend that interest would not be proper because plaintiffs agreed to extend defendants' deadline beyond November 12 in order to give the Fund additional time to process the check request and because plaintiffs' counsel needed time to have the plaintiffs' release signed and notarized in Mexico, where plaintiffs reside.

Correspondence between the parties' attorneys does reflect that plaintiffs agreed to accept the $10,000 "after November 12,

1995." *See* Letter from Deborah Schaal, Esq. to Brian Curran, Esq., dated Nov. 8, 1995 (Law Affidavit Ex. B). On February 9, 1996, plaintiffs' attorney wrote to defendant's attorney and stated that plaintiffs "had previously agreed to extend the time from the original agreement, but never contemplated that it would take this long." Affidavit of Michael R. Law, Esq., Ex. A. He told defendants' attorney that "[a]t this point I have to ask that you deliver the $10,000 no later than February 19, 1996," and that if the check was not forthcoming by then he would seek to enforce the settlement agreement. *Id.*

■ In *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Electrical Workers,* 955 F.2d 831 (2d Cir.), *cert. denied,* 506 U.S. 946, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992), the Second Circuit discussed the circumstances under which prejudgment interest is appropriate. The court stated that among the factors to consider when determining if there should be an award of prejudgment interest are: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* at 834 (citations omitted).

These considerations suggest that prejudgment interest is appropriate in this case. Plaintiffs have been deprived of $10,000 to which they are entitled, and if they had timely received the money they would have been able to earn interest on it. To make them whole, therefore, I find that prejudgment interest is warranted.

I will not, however, award interest from November 12, 1995, as requested by plaintiffs. As the above-quoted correspondence makes clear, plaintiffs did agree to extend the payment deadline beyond that date, to February 19, 1996. I believe that that is the most suitable date from which to calculate interest.

■ In general, district courts have discretion in deciding what interest rate to use in awarding prejudgment interest. *Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011, 1025

(W.D.N.Y.1990). The Second Circuit has not expressly endorsed any particular prejudgment interest rate. *Id.* Courts in this and other circuits have used various interest rates, including the postjudgment interest rate provided in 28 U.S.C. § 1961(a) [the Treasury bill rate], statutory interest rates, or market rates. *See Katsaros v. Cody,* 744 F.2d 270, 281 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (prime rate plus one percent); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1219–20 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (Missouri statutory rate); *Foltz v. U.S. News & World Report Inc.,* 613 F.Supp. 634, 648–49 (D.C.D.C.1985) (District of Columbia statutory rate); *River Oaks Marine v. Town of Grand Island,* No. 89–CV–1016S, 1992 WL 373533 at *7 (W.D.N.Y. Nov. 24, 1992) (adjusted prime rate); *Cefali,* 748 F.Supp. at 1025 (postjudgment rate).

I find that the rate provided by 28 U.S.C. § 1961(a) is the appropriate rate to apply in this case. Since February 19, 1996, the rate has fluctuated between 4.89 percent and 5.89 percent. Applying an approximate median of 5.4 percent, the amount of interest on $10,000 from February 19 to August 21, 1996, is $272.22. Plaintiffs are therefore entitled to a total judgment in the amount of $10,272.22.

### III. Attorney's Fees

■ Plaintiffs also request an award of attorney's fees for time expended on the motion to enforce the settlement. There is no general rule that attorney's fees should be awarded on a successful motion to enforce a settlement agreement, but a court may award fees in such circumstances under the court's inherent power to award attorney's fees to a successful litigant when the opposing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). In the absence of such behavior, fees are generally not awarded, unless the settlement agreement expressly provides for a fee award. *See, e.g., TNT Marketing, Inc. v. Agresti,* 796 F.2d 276 (9th Cir.1986) (affirming award of fees where stipulated judgment provided that prevailing party would be entitled to fees is "suit is brought to enforce or interpret any part of this stipulation or judgment"); *Schmidt v. Zazzara,* 544 F.2d 412, 414 (9th Cir.1976) (affirming award of attorney's fees because district court's finding that defendants' "attempt to repudiate the settlement agreement did involve the requisite bad faith so as to make this an exceptional case" was fully justified); *GRE Talbot Bird & Co. v. M.V. "Lloyd Maranhao",* No. 89 Civ. 5861, 1991 WL 19821 (S.D.N.Y. Feb. 8, 1991) (denying request for attorney's fees where defendant's failure to pay plaintiff pursuant to settlement agreement was result of its financial difficulties, not bad faith); *Atwell v. U.S. Air,* No. 89–4786, 1990 WL 167955 (E.D.Pa. Oct. 29, 1990) (denying request for attorney's fees where defendant's delay in payment under settlement agreement was not done in bad faith); *Vari–O–Matic Machine Corp. v. New York Sewing Machine Attachment Corp.,* 629 F.Supp. 257, 259 (S.D.N.Y.1986) (awarding attorney's fees to plaintiff on successful motion to enforce settlement, since defendant had acted in bad faith in requiring plaintiff to file motion); *Howard v. Chris–Craft Corp.,* 562 F.Supp. 932, 940–41 (E.D.Tex.1982) (denying fees on successful motion to enforce settlement agreement on grounds that defendants' repudiation of agreement was not done in bad faith).

■ In the case at bar, I find that the facts here do not show the requisite bad faith on defendants' part to justify an award of attorney's fees. Although defendants are obligated to pay plaintiffs $10,000, defendants apparently did not anticipate their difficulties with the Fund, and in view of these circumstances, I will deny plaintiffs' request for attorney's fees.

### CONCLUSION

Plaintiffs' motion to enforce the settlement agreement (Item 43) is granted in part and denied in part. The Clerk of the Court is directed to enter judgment against defendants and in favor of plaintiffs in the amount of $10,272.22.

IT IS SO ORDERED.