**NORTH FORK COUNTRY, LLC and Mulford Publishing, LLC, Plaintiffs,**

v.

**BAKER PUBLICATIONS, INC., William R. Baker and Lisa Gluck, Defendants.**

No. CV 03–4821(ETB).

United States District Court, E.D. New York.

June 26, 2006.

Paul K. Siepmann, The Law Office of Paul Siepmann, Patchogue, NY, for Plaintiffs.

Joseph G. Goubeaud, Jr., Joseph Goubeaud, Mount Vernon, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Plaintiffs North Fork Country, LLC ("North Fork") and Mulford Publishing, LLC ("Mulford") filed the complaint in this action in September 2003, alleging, *inter alia,* copyright infringement, unfair competition, and breach of contract claims against defendants William R. Baker ("Baker"), Lisa Gluck "(Gluck")[1] and Bak-

---

**1.** The docket sheet indicates that defendant Gluck was served with the complaint on Octo-

er Publications, Inc. ("Baker Publications"). In brief, at the time of the filing of the complaint, plaintiffs were publishers of a monthly periodical entitled "North Fork Country." From February 2001 to March 2003, defendant Baker was an employee of plaintiff corporation North Fork. In their complaint, plaintiffs allege that beginning in March 2003, Baker and Baker Publications began publishing a monthly periodical titled "North Fork Magazine," edited by defendant Gluck. Plaintiffs' causes of action stem from defendants' publication of this magazine.

On October 13, 2004, a settlement conference with the undersigned took place, at which counsel for both sides were present, along with Nancy and Robert Hungerford (principals of plaintiff corporation North Fork) and William Baker (principal of defendant corporation Baker Publications). The conference resulted in a settlement agreement which was recited on the record in open court. The relevant portion of the record is as follows:

> The Court: ... [T]his matter was in a settlement conference this morning. Would someone like to put the agreement on the record? And that would be an agreement in principle subject to the execution of more formal documents.
>
> Plaintiffs' Counsel: Thank you, your Honor. I would like to thank you for your help in facilitating this settlement. It's the parties' agreement in principle and understanding that the matter will be settled by payment from the Defendants in the amount of $5,000 on or before December 15. That the parties, all parties, will jointly cooperate in collection efforts for the accounts receiv-

able due to the North Fork Country Publication. That from those collection efforts, the Plaintiff will receive the first net $15,000, that in the event—sorry, that subsequent to that payment, anything net received in the collection effort will be split between the parties. That in the event, for whatever reason, the accounts receivable don't manifest or there is no ultimate collection, nonetheless, Plaintiff will receive a guaranteed additional $5,000 by the following year, December 15, 2005. That upon payment to Defendants of the money as outlined in this settlement, all outstanding shares of the LLC will be turned over to Mr. Baker. The parties will, within the next week to ten (10) days, exchange lists. Each party will come up with four or five names of the local East End attorney. Hopefully, we'll have some common names on each list. And the Plaintiffs will also, within the same period of time, get the Defendants up to speed on where the accounts receivable currently stand. And I believe that is the agreement in principle. Am I missing anything, Mr. Goubeaud?

> Defendants' Counsel: I don't believe so, Judge; I believe that is the agreement that we have arrived at in principle with your Honor's assistance.

> The Court: Very good. I just want to clarify one point, and that is the first $15,000 net collectible will go to the Plaintiffs ... The first $15,000 goes to the Plaintiffs. $10,000—and we're talking about net figures—$10,000 will be out of receivables, and they would get the first $10,000 in receivables. The next $5,000 is payment of the second payment due from the Defendant [sic] of

ber 9, 2003, and that on February 19, 2004, Joseph G. Gobeaud, Esq. filed a notice of appearance on behalf of defendants Gluck, Baker, and Baker Publications. However, for reasons not evident from the record, Gluck was not involved in any of the subsequent activity in this case, including the evidentiary hearing on the request by plaintiffs for a preliminary injunction, or the settlement conference. Thus, it appears that the settlement does not apply to Gluck and that the action would be discontinued as to her.

$5,000, which is due no later than next summer. And you can pick a date next summer—

Defendants' Counsel: I believe he had indicated December 15 of next year, Your Honor; that was the date.

The Court: Now, just for clarification and to avoid any problem, that would mean that the next $10,000 in collectibles would go entirely to the Defendant [sic] because you're sharing the pot as far as the receivables; that's the concept here. And then after that's evened off, then it would be shared 50/50 with regard to the balance of anything over $20,000. Now you'd like an opportunity to put this in writing; tell me how you'd like to proceed?

Plaintiffs' Counsel: Yes, Your Honor, we'll—the Plaintiff's [sic] will prepare a stipulation discontinuing this action under those terms, but with the Court retaining jurisdiction to enforce the settlement.

(Transcript of Settlement Conference before Magistrate Judge E. Thomas Boyle ("Transcript"), dated October 13, 2004, at 3–6.)

To date, a written settlement agreement or a stipulation of discontinuance has not been filed. In May, 2006, plaintiffs filed the within motion to compel enforcement of the oral settlement. Plaintiffs state in support of the motion that they had submitted a written stipulation of settlement to defendants' counsel in January 2005, and, as required by the terms of the oral settlement, provided the defendants with an updated accounts receivable statement. (Nancy Hungerford Affidavit in Support of Motion to Enforce Settlement Agreement ("Pls.' Aff.") ¶ 12; see also Letter from Paul K. Siepmann to Joseph G. Goubeaud, Jr., dated January 27, 2005, annexed to Pls.' Aff. as Exh. B, stating "A review of my file indicates that I haven't had any response from you regarding either the draft settlement stipulation faxed to you on January 11, 2004 or the accounts receivable spread sheet mailed to you on January 12, 2005.".) Defendants did not respond to letters from plaintiffs' counsel, dated January 27, 2005 and February 16, 2005, referring to the draft settlement stipulation and accounts receivable spreadsheet provided by plaintiffs. (Pls.' Aff. ¶ 14; see also Pls.' Aff. Exh B.) Defendants' counsel also repeatedly ignored phone messages from plaintiffs' counsel. (Paul Siepmann Reply Affidavit ("Pls.' Reply Aff.") ¶ 8.)

In his affidavit in opposition, defendants' counsel Joseph G. Goubeaud, Jr. ("Goubeaud") does not deny plaintiffs' statement of the relevant events herein. Goubeaud acknowledges that the terms of the settlement were recorded in open court on October 13, 2004, and that he received the proposed settlement stipulation and a list of accounts receivable from plaintiffs, in accordance with the terms of the settlement. (Joseph G. Goubeaud, Jr. Affidavit in Opposition to Motion ("Defs.' Aff. in Opp'n") ¶ 1, ¶ 5.) Defendants do not argue that the settlement agreement made on the record was conditioned upon the execution of more formal documents. Rather, defendants' counsel acknowledges that a settlement agreement was made, but apparently now takes the position that the settlement be set aside and the defendant be allowed to make a motion to dismiss because "plaintiff [sic] has failed to follow through on their portion of the agreement to allow the defendant [sic] to participate or receive any collections." (Defs.' Aff. in Opp'n ¶¶ 7–9.)

## DISCUSSION

I. *Whether the Settlement Agreement Set Forth on the Record is a Valid and Enforceable Agreement*

 "It is well established that parties are bound to the terms of a contract

even though it is not signed [or even written]." *Omega Eng'g, Inc. v. Omega, SA,* 414 F.Supp.2d 138, 148 (D.Conn.2004), aff'd by *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437 (2d Cir.2005) (brackets in original) (citations omitted). Put differently, "[t]he mere intention to commit an agreement to writing will not prevent contract formation prior to execution." *Winston v. Mediafare Entm't Corp.,* 777 F.2d 78, 80 (2d Cir.1985); *see also Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320, 322 (2d Cir.1997) ("parties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement"). The only essential prerequisite for a valid settlement agreement is that the parties assent to the terms and conditions of the settlement, and, where there is an oral settlement agreement, that the parties intend to be bound by it. *Omega Eng'g, Inc.,* 414 F.Supp.2d at 148; *Conway v. Brooklyn Union Gas Co.,* 236 F.Supp.2d 241, 248 (E.D.N.Y.2002). "If the parties do not intend to be bound until the agreement is written, they will not be bound until then." *Conway,* 236 F.Supp.2d at 248 (citations omitted). However, where the parties intend to be bound, an oral settlement is binding "even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing." *Omega Eng'g,* 414 F.Supp.2d at 148.

■ In *Winston v. Mediafare Entm't Corp.,* 777 F.2d 78, 80 (2d Cir.1985), the Second Circuit Court of Appeals set forth the factors the court must consider to determine whether parties intend to be bound by a settlement agreement absent a document executed by both sides. The factors are as follows: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston,* 777 F.2d 78 at 80–81. In evaluating these factors, the court may consider oral testimony, correspondence, and other writings. *Id.* No single factor is dispositive, but each provides significant guidance. *Id.*

■ On the first *Winston* factor, here, when the settlement was put on the record, neither party expressed a reservation to be bound in the absence of an executed agreement. Nor has either party taken any action that would indicate a reservation of the right not to be bound outside of a final written agreement. In particular, after the terms of the agreement had been placed on the record in open court, the parties were questioned about how they wanted to proceed concerning the opportunity to place the agreement in writing. Plaintiffs' counsel stated that the plaintiffs would prepare a stipulation discontinuing the action under the terms of the agreement recited on the record, with the Court retaining jurisdiction to enforce the settlement. Neither plaintiffs' nor defendants' counsel indicated at that time an intention not to be bound until the filing of any other document. *See Int'l Telemeter Corp. v. Teleprompter Corp.,* 592 F.2d 49, 55 (2d Cir.1979) (enforcing oral settlement in absence of final written agreement where parties did not express intent not to be bound); *Conway v. Brooklyn Union Gas Co.,* 236 F.Supp.2d 241, 249 (E.D.N.Y. 2002) (same); *Mone v. Park East Sports Medicine and Rehabilitation, PC.,* 99 CV 4990, 2001 WL 1518263, at *2–3 (S.D.N.Y. Nov. 29, 2001) (same); *Reich v. Best Built*

*Homes, Inc.,* 895 F.Supp. 47, 49–50 (W.D.N.Y.1995) (same).

The second factor under the *Winston* test is met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the other party. *Conway,* 236 F.Supp.2d at 249 (citing *Ciaramella,* 131 F.3d at 325). In this case, the plaintiffs performed their obligations under the settlement by providing defendants with an updated accounts receivable statement. Plaintiffs also submitted a proposed stipulation to defendants for their review and signature. Defendants acknowledge receiving both documents from plaintiffs. Accordingly, the second *Winston* factor favors enforcement.

The third *Winston* factor also weighs in favor of finding that the parties intended to be bound by the oral settlement. All of the terms of the settlement were explicitly agreed upon and recited on the record in open court. This fact "weighs heavily in favor of enforcement." *Conway v. Brooklyn Union Gas Co.,* 236 F.Supp.2d 241, 251 (E.D.N.Y.2002) ("The fact that there was agreement to each term of the settlement and that the parties recognized there were no additional terms remaining to be negotiated, weighs heavily in favor of enforcement.").

■ The fourth *Winston* factor requires the court to consider whether the agreement at issue is the type of contract that is usually committed to writing. *Winston,* 777 F.2d 78 at 80–81. Under New York law, settlements are generally in writing or, at a minimum, made on the record in open court. *Conway,* 236 F.Supp.2d at 251 (citing *Ciaramella,* 131 F.3d at 326; N.Y. C.P.L.R. § 2104). The writing serves to document the parties' intentions, as stated on the record, to enable the parties to readily enforce the settlement, consistent with the request by all parties

that the Court exercise continuing jurisdiction for this purpose. While such a writing is not necessary for the court to exercise such authority, especially where the settlement is recorded in open court, *Omega Eng'g, Inc.,* 414 F.Supp.2d at 145, the writing may serve to eliminate or at least reduce future enforcement disputes. Thus the final *Winston* factor also weighs in favor of enforcement of the oral agreement on the record.

In sum, application of the four factors of the *Winston* test heavily favor a finding that the parties intended to be bound by the oral settlement agreement placed on the record in open court, and that the settlement was not conditioned upon the execution of a more formal written document.

II. *Whether the Defendants Should be Compelled to Perform According to the Terms of the Settlement Agreement*

■ In their opposition papers, defendants do not argue that the settlement on the record is not binding, but rather argue that the settlement be set aside because "the plaintiff has failed to follow through on their portion of the agreement to allow the defendant to participate or receive any collections." (Defs.' Aff. in Opp'n ¶¶ 7–9.) Defendants argue that because plaintiffs have allegedly failed to follow through on their responsibilities under the settlement agreement, defendants have been unable to collect on the accounts receivable. However, defendants acknowledge receipt from plaintiffs of a list of accounts receivable along with the proposed written stipulation and the name of a collection attorney. (*Id.* ¶ 5.)

Defendants never disagreed with any of the terms set forth in the written settlement agreement, although defendants nev-

er signed the agreement. Defendants further contend that they received from plaintiffs a copy of a letter, apparently responsive to a collection effort, reflecting problems with the account balances resulting from purported arrangements with Baker that the balance due was a different amount than that stated in the open receivable records. (*Id.*) Defendants state that this is "something Mr. Baker could have affirmed or denied, but no one contacted Mr. Baker." (*Id.*)

Defendants' opposition is more consistent with enforcement of the terms of the agreement than with disputing that the oral agreement was intended to be binding on the parties. There are five components to the settlement. The first is an initial cash payment by defendants to plaintiffs in the sum of $5,000 by December 15, 2004. The second is cooperation between the parties in collecting outstanding receivables, with the first $10,000 going to the plaintiffs and any remaining balance split between the parties. The third is an additional cash payment in the sum of $5,000 by December 15, 2005, which was guaranteed even "in the event, for whatever reason, the accounts receivable don't manifest or there is no ultimate collection." (Transcript at 4.) Fourth, upon payment of such sums, all outstanding shares of the plaintiff corporations shall be transferred to defendant Baker. Lastly, the plaintiffs agreed to "get the [d]efendants up to speed on where the accounts receivable currently stand." (*Id.*)

It appears that the defendants take issue with this last term, claiming that plaintiffs failed to comply with this provision. The papers filed by the defendants are inadequate to enable the Court to address the issue at this time, however this issue may be raised in the future under the Court's continuing jurisdiction to enforce the terms of the settlement.

For the foregoing reasons, the Court grants the motion by plaintiffs to compel enforcement of the oral settlement agreement placed on the record on October 14, 2004.

III. *Whether Plaintiffs Should be Awarded Costs and Attorney's Fees*

 Plaintiffs also request an award of costs and attorney's fees associated with their motion to enforce the settlement. Plaintiffs have not stated the amount in issue or provided any contemporaneous time records or receipts. Nor do plaintiffs offer any argument in support of their request, or cite to any case law awarding attorneys' fees in such a case. The prevailing rule under American common law holds that, with few exceptions, parties to litigation pay their own attorney's fees regardless of the lawsuit's outcome. *Wells v. Bowen,* 855 F.2d 37, 46 (2d Cir.1988). Consistent with this rule, most of the cases in this Circuit have declined to award attorneys' fees on a successful motion to enforce a settlement. *See e.g., Hostcentric Techs, Inc. v. Republic Thunderbolt, LLC,* 04 Civ. 1621, 2005 WL 1377853, at *10 (S.D.N.Y. June 9, 2005); *Francis v. Home Box Office,* 04 Civ. 7430, 2005 WL 1020863 at *4 (S.D.N.Y. Apr. 28, 2005); *Omega Eng'g, Inc. v. Omega. S.A.,* 414 F.Supp.2d 138, 151 (D.Conn.2004); *Edelman v. Smith Barney, Inc.,* 98 Civ. 691, 2000 WL 10209 at *6 (S.D.N.Y. Jan. 6, 2000); *Torres v. Costich,* 935 F.Supp. 232, 236 (W.D.N.Y.1996) ("There is no general rule that attorney's fees should be awarded on a successful motion to enforce a settlement agreement, but a court may award fees in such circumstances under the court's inherent power to award attorney's fees to a successful litigant when the opposing party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' In the absence of such behavior,

fees are generally not awarded unless the settlement agreement expressly provides for a fee award.") (citations omitted); *Apple Corps Ltd. v. Sony Music Entm't, Inc.,* 91 Civ. 7465, 1993 WL 267362 at *9–10 (S.D.N.Y. July 14, 1993).

For the foregoing reasons, plaintiffs' request for costs and attorney's fees associated with its motion to compel enforcement of the settlement is denied.

## CONCLUSION

Plaintiffs' motion to compel enforcement of the oral settlement placed on the record in open court is granted. The Court will enforce the agreement according to the terms and conditions set forth on the record. Plaintiffs are directed to submit to the Court within ten (10) days a proposed judgment in conformance with the terms of the agreement stated on the record, on notice to all parties. Plaintiffs' request for costs and attorney's fees associated with its motion to enforce the settlement is denied.

SO ORDERED.