**Alvin L. PALMER, Plaintiff,**

v.

**The COUNTY OF NASSAU, Savino, as Sergeant, Recruit Training School aka the Police Academy, each being sued individually and in their individual capacity as employees of Defendant The County of Nassau, Defendants.**

No. 10–CV–0403 (ADS)(WDW).

United States District Court, E.D. New York.

Oct. 9, 2013.

The Sanders Firm, PC by Eric Sanders, Esq., of Counsel, New York, NY, for the Plaintiff.

Office of the Nassau County Attorney by Barbara E. Van Riper, Assistant County Attorney, Mineola, NY, for the Defendants.

Borelli and Associates, PLLC by Peter J. Famighetti, Esq., of Counsel, Great Neck, NY, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is the Plaintiff's unopposed motions to enforce the settlement agreement and for sanctions. For the reasons that follow, the Court grants the Plaintiff's motions.

## I. BACKGROUND

On February 1, 2010, the Plaintiff Alvin Palmer (the "Plaintiff") commenced this action against the Defendants The County of Nassau and Sergeant Savino (the "Defendants") The Plaintiff claimed that in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1971, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act, the Defendants (1) engaged in race discrimination; (2) engaged in retaliation; and (3) created a hostile work environment. However, on March 25, 2011, the Plaintiff notified the Court that the matter had been settled, and on March 28, 2011, the Court closed this case subject to the terms of the settlement agreement.

Thereafter, on October 18, 2011, the Plaintiff filed a letter motion to enforce the settlement agreement against the Defendants. In his letter motion, the Plaintiff explained that "despite [the] [P]laintiff['s] numerous communications with [the] [D]efendants[,] the appropriate documents have not been sent." (Dkt. No. 31.) The Plaintiff requested that the Court order the Defendants to (1) immediately send appropriate settlement documents to the Plaintiff; and (2) remit to the Plaintiff the $90,000 settlement including a 9% compound interest from the date of the settlement agreement. On October 28, 2011, the Court denied the Plaintiff's letter motion without prejudice to file a formal motion to enforce the settlement agreement or for other relief in accordance with the Local Civil Rules and the Court's Individual Rules.

According to the Plaintiff, after filing the October 18, 2011 letter motion, the Defendants' attorney, Barbara E. Van Riper, Esq. ("Van Riper"), contacted the Plaintiff's attorney, Eric Sanders, Esq. ("Sanders"), and requested that the Plaintiff not file a formal motion, because they could resolve the matter without the Court's intervention. The Plaintiff obliged the Defendants' request.

On November 29, 2011, Van Riper sent Sanders a draft copy of the settlement agreement, which Sanders forwarded to the Plaintiff on December 1, 2011. The Plaintiff signed and executed the settlement agreement on December 1, 2011. Five days later, on December 6, 2011, Sanders signed the settlement agreement.

On January 14, 2012, Sanders left a phone message for and sent an email message to Van Riper concerning the lack of resolution to this matter. On January 26, 2012, Van Riper faxed Sanders a fully executed settlement agreement, which she signed on behalf of the Defendants. According to the document, the settlement agreement and release was made on November 30, 2011.

On February 24, 2012, Sanders left Van Riper both a phone message and an email message requesting the status of payment. However, Van Riper never responded. Later in 2012, on an unspecified date, Sanders was able to reach Van Riper by blocking his telephone number and pretending to be someone else. However, in response to Sanders's inquiries, Van Riper said "What do you suggest I do?" and then hung up the telephone. Sanders also tried to call the Van Riper's supervisor, Nassau County Attorney John Ciampoli. Nevertheless, his telephone calls were never returned, despite the fact that he called numerous times between February 24, 2012 and April 10, 2013. Thus, on April 11, 2013, the Plaintiff filed the present motions to enforce the settlement agreement and for sanctions. The motions are unopposed.

## II. THE MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

■ Settlement agreements to end litigation are strongly favored by courts

and are not lightly cast aside. *Willgerodt, on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri,* 953 F.Supp. 557, 560 (S.D.N.Y.1997). Once reached by the parties, settlement agreements are binding and enforceable. *Janneh v. GAF Corp.,* 887 F.2d 432, 436 (2d Cir.1989) *rev'd on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Reich v. Best Built Homes, Inc.,* 895 F.Supp. 47, 49 (W.D.N.Y.1995).

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Comm'n Express Nat'l, Inc. v. Rikhy,* No. CV–03–4050 (CPS), 2006 WL 385323, at *2 (E.D.N.Y. Feb. 17, 2006) (citing *Meetings & Expositions Inc. v. Tandy Corp.,* 490 F.2d 714, 717 (2d Cir.1974)) (internal citations omitted).

"A settlement is a contract, and once entered into is binding and conclusive." *Little v. Greyhound Lines, Inc.,* No. 04 Civ. 6735(RCC), 2005 WL 2429437, at *1 (S.D.N.Y. Sept. 30, 2005) (citing *Janneh v. GAF Corp.,* 887 F.2d at 436). *See also Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir. 1999) ("[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law."); *Goldman v. Commissioner of Internal Revenue,* 39 F.3d 402 (2d Cir.1994) ("As the settlement agreement constituted a contract, general principles of contract law must govern its interpretation."). Pursuant to New York law, to have a binding settlement agreement, there must be an offer, acceptance, consideration, mutual assent and intent to be bound. *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,* No. 04 Civ. 1621(KMW)(A), 2005 WL 1377853, at *4 (S.D.N.Y. June 9,

2005) (citing *Register.Com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir.2004)).

"[A] 'preliminary agreement' is binding, despite the desire for a later formal document, 'when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation. Such an agreement is preliminary only in form-only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable.'" *Hostcentric,* 2005 WL 1377853, at *5 (quoting *Teachers Ins. & Annuity Ass'n v. Tribune Co.,* 670 F.Supp. 491, 498 (S.D.N.Y.1987)). In particular, the parties' intent to record an agreement in the future does not prevent contract formation before execution. *N. Fork Country, LLC v. Baker Publ'ns, Inc.,* 436 F.Supp.2d 441, 445 (E.D.N.Y. 2006) (citing *Winston v. Mediafare Entm't Corp.,* 777 F.2d 78, 80 (2d Cir.1985)). "The only essential prerequisite for a valid settlement agreement is that the parties assent to the terms and conditions of the settlement, and, where there is an oral settlement agreement, that the parties intend to be bound by it." *Id.*

Here, the parties notified the Court that they had reached a settlement and thereafter, executed a settlement agreement. There is no question that the parties intended to be bound by it. As such, the Court grants the Plaintiff's motion to enforce the $90,000 settlement including a 9% compound interest from the date the settlement agreement was entered into, March 25, 2011, even though a formal settlement agreement and release was not made until November 30, 2011. *See Hostcentric,* 2005 WL 1377853, at *5; *N. Fork Country, LLC,* 436 F.Supp.2d at 445. The Defendants are directed to pay the entire settlement within thirty (30) days of the date of this Order.

## III. THE MOTION FOR SANCTIONS

 In addition to moving to enforce the settlement agreement, the Plaintiff also moves for sanctions. In this regard,

> [f]ederal courts have inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices. Courts may impose sanctions and rely upon their inherent authority even where the conduct at issue is not covered by one of the other sanctioning provisions. Moreover, a district court may resort to its inherent power to fashion sanctions, even in situations similar or identical to those contemplated by a statute or rule.

> The Court of Appeals for the Second Circuit has always required a particularized showing of bad faith to justify the use of the court's inherent power.

*Royal Indian Raj Intern. Corp. v. Domains by Proxy, Inc.*, No. 08 Civ. 3445(JGK), 2011 WL 2946367, at *3 (S.D.N.Y. July 20, 2011) (hereinafter *"Royal Indian"*) (citations and internal quotation marks and brackets omitted); *see also Chambers v. NASCO, Inc.* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

 In this case, the Defendants' "actions indicate[d] that [they] ha[ve] proceeded in bad faith." *Royal Indian*, 2011 WL 2946367, at *3. Indeed, despite numerous attempts by telephone and by email, the Defendants' attorneys continued to ignore requests by Sanders to resolve this matter after the settlement had been reached. His phone calls and emails remained unanswered by the Defendants' attorneys for approximately a year and a half. Moreover, the Defendants have not even opposed the Plaintiff's motion for sanctions. *See id.* (noting that "the plaintiff has failed to oppose the request for sanctions" as indicative of bad faith on part of the plaintiff).

Accordingly, the Court finds that such conduct to suggest bad faith on the part of the Defendants and, therefore, sanctions are appropriate. *See id. See also Bilodeau v. Vlack*, Civ. No. 3:07CV1178 (JCH), 2010 WL 2232484, at *6–7 (D.Conn. Mar. 17, 2010). Here, the Court finds that an award of attorney's fees for the current motions to be a sufficient sanction. *Royal Indian*, 2011 WL 2946367, at *4; *Bilodeau*, 2010 WL 2232484, at *6. In this regard, Sanders claims his hourly rate, as the owner and president of the Sanders Firm, PC and as an attorney with nine years of experience, is $675 and that he has spent over 10 hours since March 25, 2011 seeking to enforce the settlement agreement. (Sanders Decl., ¶ 21.) As such, he seeks fees totaling $6,750.

 However, "[a]ttorneys' fees are determined in th[e] [Second Circuit] by reference to the 'presumptively reasonable fee,' *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir.2008) [ (hereinafter *"Arbor Hill"*) ], which 'boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively,' *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)[.]" *Konits v. Karahalis*, 409 Fed. Appx. 418, 422 (2d Cir.2011). In determining a "presumptively reasonable fee," district courts should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. Thus, in order to reach the presumptively reasonable fee, the court must assess "case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work," which is then multiplied by a rea-

sonable number of hours expended by counsel. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420 (2d Cir.2010).

■■■■ Case-specific considerations include, among others, the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Konits*, 409 Fed.Appx. at 422 (citing *Arbor Hill*, 522 F.3d at 190). Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. Nonetheless, "[t]he most critical factor in the district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." *Barfield v. N.Y. City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir.2008) (internal quotation marks and citation omitted).

■■■■ In addition, according to the Second Circuit, the "reasonable hourly rate is the rate a paying client would be willing to pay." *Id.; see McDaniel*, 595 F.3d at 420 (noting that a presumptively reasonable fee represents an approximation of "what a competitive market would bear"). Thus, "the presumptively reasonable fee is calculated by setting a reasonable hourly rate that reflects what rate a paying client would be willing to pay, and

multiplying that rate by the number of hours reasonably expended litigating the case." *Joe Hand Promotions, Inc. v. Martinez*, No. 07 Civ. 6907, 2008 WL 4619855, at *7 (S.D.N.Y. Oct. 17, 2008); *see Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 164 (E.D.N.Y.2008) (citing *Arbor Hill*, 522 F.3d at 189) (noting that the "presumptively reasonable fee" is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours.").

■■■■ The United States Supreme Court has directed that district courts should use the "prevailing [hourly rate] in the community" in calculating what the Second Circuit now refers to as the presumptively reasonable fee. *Arbor Hill*, 522 F.3d at 190 (citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The Second Circuit has explained that the "community" to which the district courts should look is the community in which the district court sits. *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983)); *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir.2009) (noting that the "presumptively reasonable fee" standard uses the hourly rates employed in the district in which the reviewing court sits, unless the party seeking fees "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.") (internal quotation omitted); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir.1998) (finding that district court did not abuse its discretion by reducing fees so that they were line with other fees awarded in the Eastern District of New York); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115–16 (2d Cir.1997) (holding that the district court, in setting fees, appropriately relied upon prevailing market

rates in the Eastern District of New York where the case was commenced and litigated); *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,* 34 F.3d 1148, 1160 (2d Cir.1994) (observing that the "prevailing community" the district court should consider is "the district in which the court sits").

"In the Eastern District of New York, depending on the nature of the action, extent of legal services provided, and experience of the attorney, hourly rates range from approximately $300 to 400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates." *Firststorm Partners 2, LLC v. Vassel,* 10–CV–2356(KAM)(RER), 2012 WL 3536979, at *3 (E.D.N.Y. Aug. 15, 2012) (collecting cases); *see Ferrara v. Prof'l Pavers Corp.,* 11–CV–1433 (KAM)(RER), 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from approximately $200–300 for senior associates, $100–$200 for junior associates, and $70–$100 for paralegals."); *Gesualdi v. Tapia Trucking LLC,* 11–CV–4174 (DLI)(JMA), 2013 WL 831134, at *1 (E.D.N.Y. Mar. 6, 2013) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants.") (citing *Ferrara v. CMR Contracting LLC,* 848 F.Supp.2d 304, 313 (E.D.N.Y.2012) (in turn, citing *Carco Group, Inc. v. Maconachy,* CV 05–6038(ARL), 2011 WL 6012426, at *3 (E.D.N.Y. Dec. 1, 2011))); *Cadles of Grassy Meadows II, L.L.C. v. St. Clair,* 10–CV–1673(JS)(ETB), 2012 WL 6617448, at *2 (E.D.N.Y. Dec. 18, 2012) ("In the Eastern District of New York, courts have determined reasonable hourly rates to be 'approximately $300–450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'") (quoting *Hugee v.*

*Kimso Apartments, LLC,* 852 F.Supp.2d 281, 298–99 (E.D.N.Y.2012) (in turn, quoting *Pilitz v. Inc. Village of Freeport,* CV 07–4078(ETB), 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011))); *Szczepanek v. Dabek,* 10–cv–2459(SJF)(ARL), 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011) (surveying cases and stating that recent prevailing hourly rates in the Eastern District are between $200 and $400 for partners, $100 and $295 for associates, and $70 and $80 for legal assistants).

■ In assessing the reasonableness of Sanders's proposed hourly rates, the Court is cognizant of the *Johnson* factors. In this case, the Court does not find that the legal work at issue—that is, the time expended to enforce the settlement agreement—was of such complexity or required particular skills of expertise so as to justify the Court stepping outside the generally acceptable range for hourly rates. Accordingly, the Court rejects the hourly rate provided by Sanders and, in light of the *Johnson* factors outlined above, determines that an hourly rate of $350 is appropriate.

■ Now that the Court has determined the appropriate hourly rate for Sanders to be $350, the Court shall proceed to assess the number of hours allegedly expended by Sanders. "In calculating the number of reasonable hours, the [C]ourt looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) (internal quotation marks and citation omitted). Of importance, a plaintiff must show contemporaneous time records, detailing, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Chil-*

*dren, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983); *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir.1998).

There are two elements to this mandated record keeping: time and content. As to time: The records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do. As to content: The records must be specific and detailed.

*Handschu v. Special Servs.Div.*, 727 F.Supp.2d 239, 249 (S.D.N.Y.2010).

 Further, the Court must assess the reasonableness of the time expended and adjust those portions of an invoice that reflect "excessive, redundant or otherwise unnecessary" hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "If the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in an across-the-board percentage deduction." *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08 Civ. 1229, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). "The Court is not, however, required to set forth item-by-item findings concerning what may be countless objections to individual billing items." *Regan v. Conway*, 768 F.Supp.2d 412, 418 (E.D.N.Y.2011).

In this case, Sanders has not presented contemporaneous and detailed time-sheets to support the number of hours for which he seeks to be compensated. In light of this, the Court directs Sanders, within thirty days of the date of this Order, to renew his motion for reasonable attorneys' fees associated with the current motions. With his renewed motion, Sanders should include the appropriate documentation to support his application.

As a final matter, the Court notes that failure by the Defendants to comply with this Order may result in additional sanctions being awarded. Further, the Court directs that there will be no payment for the legal work done with regard to Sanders's revised application.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Plaintiff's motion to enforce the settlement agreement is granted. The Defendants are directed to pay the entire settlement within thirty (30) days of the date of this Order; and it is further

**ORDERED,** that the Plaintiff's motion for sanctions is granted. The Court shall award the Plaintiff attorney's fees associated with the current motions at a rate of $350 an hour. However, the Plaintiff must first renew his motion for attorney's fees and include appropriate documentation with respect to the number of hours he seeks to be compensated. The Plaintiff is directed to submit this renewed motion within thirty days of the date of this Order. In addition, there will be no payment for legal work done with regard to the revised application for attorney's fees; and it is further

**ORDERED,** that failure by the Defendants to comply with this Order may result in additional sanctions being awarded.

**SO ORDERED.**