**Sharonann GILDEA, Plaintiff,**

v.

**DESIGN DISTRIBUTORS, INC., Defendant.**

**No. 02–CV–2011 (DLI)(ETB).**

United States District Court, E.D. New York.

July 18, 2005.

Ralph A. Somma, Somma, Zabell & Associates, LLP, Farmingdale, NY, for Plaintiff.

Douglas E. Motzenbecker, Podvey Sachs Meanor Catenacci Hildner & Cocoziello, Newark, NJ, for Defendant.

### MEMORANDUM AND ORDER

IRIZARRY, District Judge.

Plaintiff, Sharonann Gildea ("Gildea"), filed suit against Design Distributors, Inc. ("defendant") alleging employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.* Three years later, after unsuccessful mediation, the parties negotiated a settlement that Gildea refused to sign. Defendant moved to enforce the settlement agreement. This court held a hearing on June 28, 2005 to determine whether an enforceable settlement agreement exists. The court finds that there is no enforceable settlement agreement because Gildea refused to sign the written agreement and because the parties agreed that the settlement would not become binding until signed by all parties.

### Background

After failed mediation attempts before the Equal Employment Opportunity Commission, in April 2002, Gildea filed suit against her former employer, the defendant, alleging sexual harassment and pregnancy based discrimination.

The parties completed discovery and jointly filed a proposed pre-trial order on February 8, 2005. At a conference held the very next day, this court referred the matter to U.S. Magistrate Judge Steven M. Gold for mediation and also set a May 16, 2005 trial date in the event the mediation failed. On March 4, 2005, the parties attempted to negotiate a settlement before Judge Gold, but were unsuccessful. As a result of a dispute over the pre-trial order, this court set a March 23, 2005 conference date. By letter dated March 22, 2005, defendant informed the court that a settlement had been reached "in principle." The court directed the parties to file a stipulation of discontinuance by April 12, 2005. Defendant prepared a draft agreement and sent it to Gildea's then attorney, Saul Zabell ("Zabell"). Zabell, in turn, sent it to Gildea, who by this time living in Arizona. The agreement contained a provision indicating that the settlement would not be effective until executed by all the parties. Gildea, indicating that the settlement was not acceptable to her, refused to sign the agreement. Zabell moved to

withdraw as Gildea's counsel after learning that Gildea had retained his former partner, Neil Frank ("Frank"), with whom he currently is engaged in a legal dispute over the dissolution of their firm. On May 17, 2005, the court relieved Zabell as counsel.

Claiming that the parties had reached an enforceable oral settlement, defendant moved to enforce it.

### Findings of Fact

At a hearing held on June 28, 2005, Gildea testified to the following: during settlement discussions between Gildea and Zabell earlier this year, Gildea claimed that she had indicated she would not settle the instant matter unless she recovered a net amount of $100,000. During the mediation proceedings before Judge Gold on March 4, 2005, Zabell contacted Gildea to communicate that defendant had offered, and Judge Gold approved of, an offer of $60,000 to $66,000. Gildea claimed she rejected the offer, and reiterated her demand of $100,000 net recovery. Two weeks later, Zabell contacted Gildea to inform her that defendant had increased the settlement offer to $70,000 to $75,000. Gildea rejected this offer and repeated her $100,000 demand. At the end of March, Gildea received a call from Zabell's secretary informing her that Zabell had settled her case for $87,500.

She immediately asked to speak to Zabell and informed him that the settlement was unsatisfactory, that he had no authority to settle for that amount, and that he would have to renegotiate the settlement or reduce his attorney's fees. Zabell refused to renegotiate the settlement or reduce his attorney's fees. The court especially notes a letter dated March 8, 2005 from defense counsel, Douglas Motzenbecker ("Motzenbecker"), to Zabell wherein Motzenbecker indicates that at the time of the mediation proceedings' collapse, Gil-

dea's last demand had been $110,000. Further, that letter makes clear that, although he testified to the contrary, Zabell had in fact agreed to reduce his attorney's fees to effectuate a settlement. Gildea received a copy of the settlement agreement but refused to sign it and, instead, contacted Frank.

At the hearing, Zabell testified that he did discuss a net recovery with Gildea, but did not recall the amount she demanded. Zabell also failed to recall whether Gildea asked him to communicate a specific initial demand at the March 4, 2005 mediation. His opening demand on behalf of Gildea was $125,000, but mediation faltered when Gildea, through Zabell, rejected an offer of $100,000 gross. Despite this outcome, Zabell claims that Gildea never indicated a refusal to settle for anything less than $100,000. Indeed, he claims that Gildea affirmatively stated that a $100,000 settlement was acceptable to her even though her actual award would amount to approximately $67,000 after deducting attorney's fees. Zabell also testified that the terms of the written settlement agreement were of a customary kind. He further admitted that he was aware that the agreement included a provision binding the parties to the agreement only upon execution of the agreement by both sides.

### Discussion

■ In *Ciaramella v. Reader's Digest Association, Inc.*, the Second Circuit reiterated the factors courts must consider when determining whether parties "intended to be bound by a settlement agreement in the absence of a document executed by both sides." 131 F.3d 320, 323 (2d Cir. 1997). They are the following: (1) whether the parties expressly provided that they were not to be bound in the absence of an executed agreement; (2) partial performance; (3) whether the parties were in agreement as to material terms; and (4)

whether the agreement at issue is of the kind normally memorialized. *Id.*

### (1) Express Reservation

■ Language expressing an intention not to be bound in the absence of a written and signed agreement is given "considerable weight, as courts should avoid frustrating the clearly-expressed intentions of the parties." *Ciaramella*, 131 F.3d at 324.

As in *Ciaramella*, the settlement agreement in the instant case includes several provisions reflecting an intent not to be bound until the agreement's execution. For example, paragraph 9 includes, in relevant part, the following: "This Agreement will be deemed to have been jointly authored, and will be effective upon the last signing party's execution and delivery thereof." In addition to this unambiguous provision, paragraph 2(b) includes language specifically instructing the disbursement of the settlement amount after the agreement's execution: "... within twenty-one days of Gildea's execution and delivery of this agreement." Nothing in the record indicates a contrary intent.

### (2) Partial Performance

In *Ciaramella*, the court found no evidence of partial performance where defendants had not paid any money to plaintiff and where defendants had not provided plaintiff with a reference letter, a material term in the agreement. *See* 131 F.3d at 325. Here, defendant has not made any of the three installment payments stipulated to in the agreement. Further, paragraphs 1(a) and 2(c) contain a requirement that Gildea's attorneys prepare, sign, and deliver a stipulation of discontinuance to defendant. No such stipulation was ever prepared. Therefore, the settlement agreement was not partially performed.

### (3) Material Terms

The single most important term of the agreement, the settlement amount, is precisely what is presently in dispute. Zabell contends Gildea authorized him to settle for $87,500, but Gildea vehemently disputes this assertion. In light of the history of this case, specifically the failed attempts at mediation, the March 8, 2005 letter from Motzenbecker to Zabell, and given that Zabell could neither recall the amount Gildea required as a net recovery nor whether she specified an initial mediation demand, the court is inclined to credit Gildea's testimony with respect to the amount she was willing to settle for and, consequently, finds that the parties here had not yet reached agreement on all terms of the settlement.

### (4) Type of Agreement That is Usually Reduced to a Writing

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326 (citing N.Y. C.P.L.R. § 2104; and Cal.Civ.Proc.Code § 664.6). In ruling that the agreement in that case is one that is typically reduced to writing, the court found it compelling that the agreement contained provisions applying "in perpetuity," such as, for example, those referring to the handling of reference letters by defendant and prohibiting plaintiff from publicly disparaging defendant. *Id.* The agreement at issue contains similar provisions, for example, paragraph 6 prohibits Gildea from engaging in any communications relating to defendant, and paragraph 7 specifies how Gildea's future requests for reference letters are to be handled by defendant.

Defendant's reliance on *Mone v. Park East Sports Medicine and Rehabilitation, P.C.*, No. 99 Civ. 4990, 2001 WL 1518263, at *3 (S.D.N.Y.2001), is misplaced since

the draft settlement agreement at issue there contained no express reservation of the right not to be bound in the absence of a signed writing.

## Conclusion

The totality of the evidence indicates that Gildea never entered into a binding settlement agreement with defendant. The express reservation of rights pending an executed settlement agreement, the absence of partial performance, the disagreement as to a material term, and the custom of reducing such an agreement to writing support the conclusion that no enforceable settlement agreement exists. Accordingly, defendant's motion is denied.