**Burley COLLICK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 05CV5968(ADS)(AKT).**

United States District Court, E.D. New York.

April 28, 2008.

Jamie G. Rosner, Esq., of Counsel, Keegan & Keegan, Ross & Rosner, LLP, Patchogue, NY, for the Plaintiff.

Benton J. Campbell, United States Attorney, Eastern District of New York, by James Halleron Knapp, Assistant United States Attorney, Central Islip, NY.

SPATT, District Judge:

This personal injury action was commenced by the plaintiff, Burley Collick ("Collick"), against the United States of America (the "government") under the Federal Tort Claims Act ("FTCA"). The government now moves the Court for an

order enforcing a settlement orally agreed upon by the parties.

## I. BACKGROUND

The following facts are derived from the complaint and the parties' submissions on the motion.

On October 1, 2004, at approximately 1 o'clock in the afternoon, the plaintiff was operating his bicycle on Montauk Highway, 2500 feet west of Gazzola Drive. The Court takes judicial notice that this intersection is located in Patchogue, New York. At approximately the same time, a United States Postal Service ("USPS") letter-carrier was operating a mail delivery vehicle and exited a private driveway intending to turn right onto Montauk Highway. The plaintiff and the delivery vehicle collided causing the plaintiff to sustain injuries, including a fracture of his L–2 lumbar vertebra. In his complaint, the plaintiff alleged that the negligent operation of the mail delivery vehicle was the proximate cause of his injuries.

The government asserts that in January of 2007, the plaintiff's counsel requested and was granted a ninety day extension of discovery due to the plaintiff's incarceration on a pending state criminal matter. Between January 2007 and March 2007, counsel for the government and Collick's attorney engaged in settlement discussions, throughout which the government contends that Collick's counsel represented that Collick had authorized him to settle the action. The government states that in March of 2007, the plaintiff's counsel, acting on the plaintiff's behalf, orally agreed to accept the defendant's settlement offer of $22,500. By letter dated March 15, 2007, counsel for the government mailed to plaintiff's counsel a "Stipulation for Compromise Settlement and Release of the FTC Claims Pursuant to 28 U.S.C. § 2677" and a "Stipulation of Dismissal with Prejudice," (collectively, the "Settlement Documents"). Plaintiff's counsel signed the stipulations and forwarded the Settlement Documents to the plaintiff for his review and signature.

Further, relying on the oral settlement agreement with the plaintiff's counsel, the government submitted a letter on behalf of both parties to United States Magistrate Judge A. Kathleen Tomlinson, dated March 29, 2007, requesting an adjournment of a telephone conference scheduled for April 3, 2007, "pending consummation of settlement." The letter represented to Judge Tomlinson that "the parties have agreed to settle this FTCA action." Judge Tomlinson granted the adjournment and rescheduled the conference for May 3, 2007. (Electronic Order, 05CV5968, March 30, 2007). However, after consulting with his client, Collick's counsel advised the government that the plaintiff had repudiated his prior acceptance of the settlement offer in accordance with advice that he had received from a prison colleague. Presently, the government seeks an order enforcing the settlement that Collick orally accepted.

In response, Collick contends that he should not be bound by the terms of the oral agreement because he was confined to a correctional facility and could not adequately converse with his attorneys prior to assenting to the settlement. Further, the plaintiff states that upon receiving the proposed Settlement Documents and consulting with other individuals in prison with pending lawsuits, he learned that the case, including his deposition and medical examinations, could go forward despite his incarceration. The plaintiff states that upon learning of this information, he decided that the terms of the settlement were not fair and would not adequately compensate him for his injuries. In an undated

letter to his attorney, the plaintiff explained:

> I have received your letter and settlement agreement. I come to the conclusion that I will not be [accepting] this offer of $22,500. I find this amount to be [an] insult to my injuries. I suggest that you and Mr. Knapp take this matter as serious as I am. A more suitable amount should be offered if not your are going to have to put in an order to produce, have me complete my deposition and make my doctor(s) appointment. I will not walk away from this, nor will I settle for mere crumbs that are being offered. . . .

(Plaintiff's Exhibit A, Undated Letter from Burley Collick III to Jamie G. Rosner, Esq.)

Further, the plaintiff asserts that all of the cases relied upon by the government in support of its motion to enforce the oral settlement agreement differ materially from the present situation because all of those cases involve plaintiffs who were able to consult with their attorneys, without limitation, prior to consenting to the settlement.

## II. DISCUSSION

■ Settlement agreements to end litigation are strongly favored by courts and are not lightly cast aside. *Willgerodt, on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri,* 953 F.Supp. 557, 560 (S.D.N.Y.1997). Once reached by the parties, settlement agreements are binding and enforceable. *Janneh v. GAF Corp.,* 887 F.2d 432, 436 (2d Cir.1989) rev'd on other grounds by *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Reich v. Best Built Homes, Inc.,* 895 F.Supp. 47, 49 (W.D.N.Y.1995). Further, "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Comm'n Express Nat'l, Inc. v. Rikhy,* No. 03CV4050, 2006 WL 385323, at *2 (E.D.N.Y. Feb.17, 2006) (citing *Meetings & Expositions Inc. v. Tandy Corp.,* 490 F.2d 714, 717 (2d Cir.1974) (internal citations omitted)).

■ "A settlement is a contract, and once entered into is binding and conclusive." *Little v. Greyhound Lines, Inc.* No 04CV6735, 2005 WL 2429437, at *1 (S.D.N.Y. Sept.30, 2005) (citing *Janneh,* 887 F.2d at 436). *See also Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir.1999) ("[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law"); *Goldman v. Commissioner of Internal Revenue,* 39 F.3d 402 (2d Cir.1994) ("As the settlement agreement constituted a contract, general principles of contract law must govern its interpretation"). Pursuant to New York law, to have a binding settlement agreement, there must be an offer, acceptance, consideration, mutual assent and intent to be bound. *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,* No. 04CV1621, 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (citing *Register.Com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir.2004)).

■ "It is axiomatic that the decision to settle a case rests with the client." *Pereira v. Sonia Holdings (In re Artha Mgmt.),* 91 F.3d 326, 329 (2d Cir.1996) (citing *Fennell v. TLB Kent Co.,* 865 F.2d 498, 501–02 (2d Cir.1989)). However, "because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *Id.; see also Alvarez v. City of New York,* 146 F.Supp.2d 327, 334

(S.D.N.Y.2001) ("Although the decision to settle a case rests with the client, courts will presume that an attorney who enters into a settlement agreement has the authority to do so."). Thus, a party challenging an attorney's settlement authority bears the burden of showing that the attorney lacked authority to settle. *Alvarez*, 146 F.Supp.2d at 334.

The most important consideration in determining whether an oral settlement agreement is binding on the parties is their intent to be bound without a formalized writing. *See Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir.1997) (citing *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir.1985)). The Second Circuit has articulated a four part test to determine whether parties intend to be bound by a settlement agreement in the absence of an executed document. *Id.* "We must consider (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* Although no single factor is decisive, each factor provides guidance to the Court. *See Id.* In addition, the Court should consider a fifth factor, fundamental fairness. *See Walker v. City of New York*, No. 05CV0004, 2006 WL 1662702, at *9–10, (E.D.N.Y. June 15, 2006); *Conway v. Brooklyn Union Gas Co.*, 236 F.Supp.2d 241, 252 (E.D.N.Y. 2002).

### 1. *Express Reservation Not to Be Bound Absent a Writing*

There are several indications in the proposed Settlement Documents that the parties did not intend to bind themselves to an agreement until formal execution of the written documents. Courts should give such statements considerable weight to avoid frustrating the clearly-expressed intent of the parties. *See Ciaramella*, 131 F.3d at 324.

First, paragraph seven of the proposed "Stipulation for Compromise Settlement and Release of the FTC Claims Pursuant to 28 U.S.C. § 2677" states, in part: "Payment of the consideration set forth in paragraph two hereof shall be made by the United States of America to the plaintiff *only after execution* by the parties of these documents *and approval* by the Court of the Stipulation and Order of Dismissal." In *Ciaramella*, the court found that similar language in the proposed written settlement agreement, directing that the defendant proffer payment within ten business days of the latter of the effective date of the agreement or entry by the court of the stipulation of dismissal, indicated that the defendant had no obligation to pay until the agreement was signed and became effective. Thus, no binding agreement existed before that time. *Id.; see also Gildea v. Design Distributors, Inc.*, 378 F.Supp.2d 158, 161 (E.D.N.Y.2005) (finding that language indicating that the written agreement would take effect upon the last signing party's execution and delivery, as well as language instructing disbursement of the settlement amount after the agreement's execution reflecting an intent not to be bound until final execution of the written agreement).

Further, the proposed "Stipulation of Dismissal with Prejudice" states, in part: "IT IS HEREBY STIPULATED AND AGREED, by and between the parties to the above-captions action, by and through their respective undersigned counsel that, in accordance with the Stipulation For Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant

to 28 U.S.C. § 2677, *executed herein,* this action, and any and all claims arising therefrom, is *hereby* dismissed with prejudice...." Again, this language indicates an intention that the would action be dismissed and the parties bound only after execution of the written settlement instrument. *See Ciaramella,* 131 F.3d at 324 (finding similar language to bolster the conclusion that the parties did not intend to be bound).

Although both parties manifested to the Court, by letter to Judge Tomlinson dated March 29, 2007, that "the parties have agreed to settle this FTCA action," this fact does not conclusively establish that the parties intended to be bound by the earlier oral agreement. The parties' letter was submitted primarily for the purpose of requesting an adjournment of the approaching conference date, "pending consummation of settlement." A binding settlement in the matter would have obviated the need to re-schedule the conference to a future date. The request for an adjournment, and the manner that the request was made, tends to show that the parties anticipated the possibility that the agreement could somehow be disturbed prior to "consummation of settlement." Accordingly, the Court finds that both parties intended to be bound only upon execution of the written Settlement Documents.

### 2. *Partial Performance of the Agreement*

"A second factor for consideration is whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *Id.* at 325. Here, in accordance with the proposed Settlement Documents no payment was made to Collick prior to execution, and there is no other evidence of partial performance under the agreement.

### 3. *Terms Remaining to be Negotiated*

The plaintiff does not dispute that all of the material terms of the settlement were agreed to in the parties' oral discussions. However, the Court notes that the written proposed Settlement Documents did include a term that apparently was not part of the oral agreement. It is unclear from the record whether the parties discussed and agreed to the provision at paragraph 8, of the "Stipulation for Compromise Settlement and Release of the FTC Claims Pursuant to 28 U.S.C. § 2677," which provided that the terms of the agreement may be made public and adding that "the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b)."

### 4. *Type of Agreement Typically Reduced to Writing*

 Although the agreement here is not of a complexity or magnitude that would always require a writing, the Second Circuit has recognized that "[w]here ... the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston,* 777 F.2d at 83. Further, "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella,* 131 F.3d at 326 (citing N.Y. C.P.L.R. § 2104; and Cal.Civ. Proc.Code § 664.6 (West 1996)).

### 5. *Fundamental Fairness*

Here, the plaintiff acknowledges that he gave his attorney authority to settle the matter and that he manifested assent to the proposed $22,500 settlement. Still, the plaintiff asserts that he did not fully comprehend the legal ramifications of his incarceration with respect to his pending

civil lawsuit at the time he agreed to the settlement. Further, the plaintiff states that the circumstances of his incarceration did not permit him to adequately converse with his attorneys prior to giving his acceptance. Therefore, in addition to the independent reasons supporting the conclusion that no enforceable settlement agreement exists, set forth above, the Court maintains serious reservations about enforcing an oral settlement under these extraordinary and unusual circumstances.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the defendant's motion to enforce the settlement is denied.

**SO ORDERED.**